PER CURIAM:
Defendant, Anthony Kebodeaux, a federally-adjudged sex offender, was convicted of knowingly failing to update his sex offender registration after his intra-state change of residence (from El Paso to San Antonio, Texas) as required by the Sex Offender Registration and Notification Act (“SORNA”), 18 U.S.C. § 2250(a)(2)(A) and 42 U.S.C. § 16913. He was sentenced to twelve months and one day of imprisonment. On appeal, he argues that the Constitution does not grant Congress the authority to enact § 2250(a)(2)(A) because that provision regulates purely intra-state activities, rather than any aspect of Congress’s proper domain of interstate commerce. We conclude that § 2250(a)(2)(A) is constitutional.

BACKGROUND

In 1999, Kebodeaux, a twenty-one-year-old member of the United States Air Force, was convicted under Article 120 of the Uniform Code of Military Justice, 10 U.S.C. § 920, of Carnal Knowledge With a Child, and sentenced to three months of confinement and a bad conduct discharge. The victim was a fifteen-year-old with whom Kebodeaux had sexual relations to which the victim assented in fact though she lacked the legal ability to consent. Kebodeaux served his sentence and was dishonorably discharged from the military. No term of supervised release was imposed.
*295 On August 8, 2007, Kebodeaux registered as a sex offender in El Paso, Texas, and reported his residence at a street address in that city, in compliance with SOR-NA. See 42 U.S.C. § 16913. On January 24, 2008, El Paso police were unable to locate Kebodeaux at that address. On March 12, 2008, Kebodeaux was found and arrested in San Antonio, Texas. Kebodeaux admits that he did not update his registration or otherwise inform authorities of his relocation from El Paso to San Antonio as required by SORNA.[1] On April 2, 2008, a federal grand jury indicted Kebodeaux on one count of violating of SORNA, 18 U.S.C. § 2250(a).
Section 2250(a) makes it a crime punishable by up to ten years imprisonment if a person who:
(1) is required to register under [SOR-NA]; (2)(A) is a sex offender as defined for the purposes of [SORNA] by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
(3) knowingly fails to register or update a registration as required by [SORNA],
Thus, “Section 2250 imposes criminal liability on two categories of persons who fail to adhere to SORNA’s registration [and updating] requirements: any person who is a sex offender ‘by reason of a conviction under Federal law, the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States, § 2250(a)(2)(A)’, and any other person required to register under SORNA who ‘travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country,’ § 2250(a)(2)(B).” Carr v. United States, - U.S. -, 130 S.Ct. 2229, 2238, 176 L.Ed.2d 1152 (2010) (alteration removed). Accordingly, “[f]or persons convicted of sex offenses under federal or Indian tribal law, interstate travel is not a prerequisite to § 2250 liability.” Id. at 2235 n. 3 (citing § 2250(a)(2)(A)).
In response to Kebodeaux’s pre-trial filings, the Government stated that it was charging Kebodeaux solely because he fell under 18 U.S.C. § 2250(a)(2)(A), as he qualified as a sex offender “for the purpose of’ SORNA “by reason of a conviction under ... the Uniform Code of Military Justice” and knowingly failed to update his registration when he moved intra-state, within Texas. The Government also stated that it was not charging Kebodeaux under § 2250(a)(2)(B), for having traveled in interstate or foreign commerce or having entered an Indian reservation and knowingly having failed to update his registration. After a bench trial on the stipulated facts described above, Kebodeaux was convicted and subsequently sentenced to twelve months and one day of imprisonment, with a five-year term of supervised *296 release. Kebodeaux timely appeals the constitutionality of his conviction and sentence.

DISCUSSION

We review challenges to the constitutionality of a conviction de novo. United States v. Whaley, 577 F.3d 254, 256 (5th Cir.2009).
Kebodeaux narrowly focuses his challenge exclusively on § 2250(a)(2)(A)’s punishment of a federal sex offender for knowingly failing to update his registration after an intra-state relocation. He concedes the constitutional validity of the balance of SORNA’s provisions.
Under § 2250(a)(2)(B), SORNA makes it a federal offense for a sex offender convicted. under state or federal law to knowingly fail to update his SORNA registration after traveling in interstate commerce. This court and others have consistently held that § 2250(a)(2)(B) is a constitutional execution of Congress’s power to regulate the channels of, and persons in, interstate commerce.[2] Kebodeaux does not question those holdings or the constitutionality of § 2250(a)(2)(B). He argues only that § 2250(a)(2)(A), in isolation, is unconstitutional because it is an invalid attempt by Congress to regulate intra-state activities, rather than interstate commerce.
Kebodeaux’s argument ignores the fact that § 2250(a)(2)(A) does not require the “interstate commerce” jurisdictional hook. That section expressly deals with persons convicted under federal sex offender statutes. Federal sex offender statutes themselves are promulgated under various provisions of Article I. See, e.g., 18 U.S.C. § 2243(a) (criminalizing “sexual abuse of a minor or ward” in United States “special maritime and territorial jurisdiction”, pursuant to Congresses power Article 1 power “[t]o define and punish ... felonies committed on the high seas”). Here, Congress has the right to criminalize sexual abuse of a minor by a member of the military, pursuant to its power to regulate the military under Article 1, Section 8, Clauses 14 and 16 of the United States Constitution. Kebodeaux does not suggest that Congress lacked the authority to criminalize the conduct of which he was convicted or that the statute under which he was convicted was unconstitutional. The next question becomes whether Congress’s power over federal sex offenses stretches far enough to encompass a registration requirement. The Necessary and Proper Clause of the Constitution gives Congress the power “[t]o make all laws which shall be necessary and proper for carrying into Execution” the enumerated powers. U.S. Const., art. 1, § 8, cl. 18. Specifically, in respect to effectuating the Commerce Clause power, the Supreme Court has explained that the Necessary and Proper Clause provides Congress the authority to enact “comprehensive legislation to regulate the interstate market” even when that “regulation ensnares some purely intrastate activity.” Gonzales v. Raich, 545 U.S. 1, 22, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005). In Raich, the Court held that under the Controlled Substances Act (“CSA”), through the Necessary and Proper Clause power to effectuate the Commerce Clause authority, Congress could regulate the intra-state production of *297 marijuana as “Congress could have rationally concluded that the aggregate impact on the national market of all the” regulated intra-state activities “is unquestionably substantial.” 545 U.S. at 32, 125 S.Ct. 2195.
The Supreme Court recently addressed Congress’s ability under Article 1, Section 8, Clause 18 to promulgate statutes relating to federal crimes in United States v. Comstock, - U.S. -, 130 S.Ct. 1949, 176 L.Ed.2d 878 (2010). In that case, the Supreme Court held that the Necessary and Proper Clause empowers Congress to enact legislation that is “reasonably adapted” to effectuating an enumerated power. Id. at 1957, 1961. Specifically, in Com-stock, the Supreme Court upheld a federal civil-commitment statute that “authorizes the Department of Justice to detain a mentally ill, sexually dangerous federal prisoner beyond the date the prisoner would otherwise be released[,] 18 U.S.C. § 4248.” Id. at 1954. The Court concluded that Congress had such power based upon the Necessary and Proper Clause’s authorization to implement the Commerce Clause and other enumerated powers. It explained that to determine whether a statute was a constitutional exercise of the Necessary and Proper Clause power “we look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power.” Id. at 1956 (emphasis added); see also id. at 1962 (stating that the statute is constitutional under the Clause if it “represents] a rational means for implementing a constitutional grant of legislative authority”). The civil-commitment statute was constitutional, therefore, as it was “ ‘reasonably adapted’ to Congress’s power to act as a responsible federal custodian (a power that rests, in turn, upon federal criminal statutes that legitimately seek to implement constitutionally enumerated authority,” including the Commerce Clause power.) Id. at 1961, 1964 (citations omitted) (quoting United States v. Darby, 312 U.S. 100, 121, 61 S.Ct. 451, 85 L.Ed. 609 (1941)) (emphasis added).
In Comstock, the Court began its analysis of the statute by “assuming] for argument’s sake that the Federal Constitution would permit a State to enact this statute.” With that assumption, the Necessary and Proper Clause question then is “whether the Federal Government, exercising its enumerated powers, may enact such a statute as well.” 130 S.Ct. at 1956. Analyzed this way, Kebodeaux’s suggestion that the fact that he no longer is in custody or on supervised release renders the federal government powerless over him is inapposite. No one challenges that a state may require registration of a state sex offender who has been released from custody and parole. So, too, may the federal government require a federal sex offender to register even if he is no longer in custody or on supervised release.
The Comstock Court described five factors it considered in holding that the civil-commitment statute was constitutional: “(1) the breadth of the Necessary and Proper Clause, (2) the long history of federal involvement in [legislating in relation to ‘prison-related mental health statutes,’ like the one at issue in Comstock], (3) the sound reasons for the statute’s enactment ..., (4) the statute’s accommodation of state interests, and (5) the statute’s narrow scope.” Id. at 1965.
These factors implement the notion that Congress may pass laws rationally related or reasonably adapted to the effectuation of enumerated powers. For example, in discussing the first factor, the Court wrote: “We have ... made clear that, in determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular feder *298 al statute, we look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power.” Id. at 1956. Regarding the second factor, the Court explained that the history of federal involvement in an area could not on its own “demonstrate a statute’s constitutionality”; instead, the Court stated it was a means of analyzing “the reasonableness of the relation between the new statute and pre-existing federal interests.” Id. at 1958. Similarly, in expounding the third factor, the Court stated that a court should find the reasons for a statute sound if they “satisf[y] the Constitution’s insistence that a federal statute represent a rational means for implementing a constitutional grant of legislative authority.” Id. at 1962.
The Eleventh Circuit has construed Comstock as holding that a statute that is “rationally related” or “reasonably adapted” to an enumerated power is a constitutional expression of the Necessary and Proper Clause power. See United States v. Belfast, 611 F.3d 783, 804 (11th Cir. 2010) (stating that Comstock holds that to determine whether “the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, we look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power”) (quoting Comstock, 130 S.Ct. at 1956) (emphasis in original) (internal quotation marks omitted).
Reviewing the Comstock factors in light of the Court’s analysis, we conclude that the SORNA registration requirement for registration of federal sex offenders is rationally related to the original goals of the criminal statutes under which persons such as Kebodeaux were convicted. We conclude that interstate travel does not have to be part of the analysis.

CONCLUSION

Accordingly, we conclude that § 2250(a)(2)(A)’s application to intra-state violations of SORNA by sex offenders convicted under federal law is constitutional. For these reasons, the judgment of the district court is
AFFIRMED.

. 42 U.S.C. § 16913(a) provides: "A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.” 42 U.S.C. § 16913(c) also provides, “A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.”

. Whaley, 577 F.3d at 258; accord United States v. George, 625 F.3d 1124, 2010 WL 4291497, at *4 (9th Cir.2010); United States v. Guzman, 591 F.3d 83, 90 (2d Cir.), cert. denied, - U.S. -, 130 S.Ct. 3487, 177 L.Ed.2d 1080 (2010); United States v. Gould, 568 F.3d 459, 470-72 (4th Cir.2009), cert. denied, - U.S. -, 130 S.Ct. 1686, 176 L.Ed.2d 186 (2010); United States v. Ambert, 561 F.3d 1202, 1210-11 (11th Cir.2009); United States v. May, 535 F.3d 912, 921-22 (8th Cir.2008).