FILED
United States Court of Appeals
Tenth Circuit

May 2, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ALDEN YELLOWEAGLE,

Defendant-Appellant.

No. 09-1247

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:08-CR-00364-WYD-1)**

Jill M. Wichlens, Assistant Federal Public Defender (Raymond P. Moore, Federal
Public Defender, with her on the briefs), Denver, Colorado, for Defendant-
Appellant.

Michael Conrad Johnson, Assistant United States Attorney (David M. Gaouette,
United States Attorney, and Hayley Elizabeth Reynolds, Assistant United States
Attorney, with him on the brief), Denver, Colorado, for Plaintiff-Appellee.

Before **TACHA**, **KELLY**, and **HOLMES**, Circuit Judges.

**HOLMES**, Circuit Judge.

Congress has enacted an elaborate system of registration and reporting

requirements for individuals convicted of sex offenses. The law requires all sex

offenders to register, regardless of whether their convictions are based on federal

or state law.  For those sex offenders whose convictions are based on federal law, an enforcement provision provides that the failure to register or update a registration constitutes a new federal crime.

Alden Yelloweagle, the appellant here, was previously convicted of a federal sex offense.  When he failed to register as required, he was indicted by federal authorities under the enforcement provision.  Mr. Yelloweagle moved to dismiss the indictment for various reasons.  Two of the reasons he offered are relevant here.  First, he contended that no provision of the Constitution authorizes Congress to require *all* sex offenders to register.  Accordingly, Mr. Yelloweagle argued, he could not be punished for failing to comply with the requirement.  Second, even if the registration requirement was valid, Mr. Yelloweagle contended that the criminal enforcement provision also lacked a jurisdictional basis and therefore was unconstitutional.  The district court denied the motion to dismiss.

In his opening brief on appeal, Mr. Yelloweagle makes no mention of the first argument regarding the registration requirement; he focuses only on the claim that Congress lacks the power to *criminalize* the failure to register under the enforcement provision.  The government argues that this tactical shift dooms Mr. Yelloweagle's appeal, for if the registration requirement is presumed to be constitutional, then the criminal provision is valid under the Necessary and Proper Clause.  *See* U.S. Const. art. I, § 8, cl. 18.  We agree.

-2-

More specifically, we conclude that Mr. Yelloweagle has abandoned on appeal his constitutional challenge to the registration requirement. When we assume that the registration requirement is constitutional, it follows that the criminal statute enforcing compliance with that requirement is a valid exercise of congressional authority under the Necessary and Proper Clause. For this reason, we **AFFIRM** the judgment of the district court.

## I.     BACKGROUND

### A.     The Sex Offender Registration and Enforcement Regime

In 2006, based on its conclusion that existing sex-offender registration and reporting requirements were too readily circumvented, Congress enacted the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"), Pub. L. No. 109-248, 120 Stat. 587 (codified in scattered sections of 8, 10, 18, 21, 28, and 42 U.S.C.). *See United States v. Gould*, 568 F.3d 459, 473–74 (4th Cir. 2009) (discussing Congressional findings), *cert. denied*, 130 S. Ct. 1686 (2010). The Act sought "to protect the public from sex offenders and offenders against children" by establishing "a comprehensive national system for the registration of those offenders." 42 U.S.C. § 16901.

Title I of the Adam Walsh Act is called the Sex Offender Registration and Notification Act ("SORNA"). "SORNA was enacted to keep track of sex offenders." *United States v. George*, 625 F.3d 1124, 1129 (9th Cir. 2010). Among other things, SORNA requires each state to "maintain a jurisdiction-wide

sex offender registry," 42 U.S.C. § 16912(a), and to "provide a criminal penalty

that includes a maximum term of imprisonment that is greater than 1 year for the

failure of a sex offender to comply" with the Act's registration requirements, *id.*

§ 16913(e). States are also required to publicize certain information about

registered sex offenders, *id.* § 16918, and to share that information with federal

and other state law enforcement authorities, *id.* § 16921. States failing to

establish a registration and notification system in accordance with SORNA risk

losing federal funding. *See id.* § 16925; *see also United States v. Shenandoah*,

595 F.3d 151, 155–56 (3d Cir.) (discussing various provisions of SORNA), *cert.*

*denied*, 130 S. Ct. 3433 (2010). All states have enacted registration regimes. *See*

*Carr v. United States*, 130 S. Ct. 2229, 2239 n.7 (2010) (citing *Smith v. Doe*, 538

U.S. 84, 90 (2003)).

In addition to requiring states to establish registration regimes, SORNA

imposes a separate federal registration requirement. It provides:

> A sex offender shall register, and keep the registration current,
> in each jurisdiction where the offender resides, where the
> offender is an employee, and where the offender is a student. For
> initial registration purposes only, a sex offender shall also
> register in the jurisdiction in which convicted if such jurisdiction
> is different from the jurisdiction of residence.

42 U.S.C. § 16913(a). SORNA defines "sex offender" as "an individual who was

convicted of a sex offense." *Id.* § 16911(1). The Act lists certain categories of

criminal convictions that qualify as sex offenses, and makes clear that the

registration requirement is applicable to all sex offenders, whether their convictions are based on federal or state law. *See id.* § 16911(5)–(6).

In addition to the requirement that states enact criminal penalties for the failure to register, SORNA contains its own criminal provision, 18 U.S.C. § 2250(a), which provides that an individual who fails to register under § 16913 is guilty of an independent federal offense. Unlike § 16913, which applies to all sex offenders regardless of whether their convictions arise under federal or state law, § 2250(a) criminalizes the failure to register for only two classes of sex offenders. It provides:

> (a) In General.—Whoever—
>
> (1) is required to register under the Sex Offender Registration and Notification Act;
>
> (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
>
> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
>
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
>
> shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a). Thus, § 2250(a) "imposes criminal liability on two categories of persons who fail to adhere to SORNA's registration requirements: any person who is a sex offender 'by reason of a conviction under Federal law . . . ,' § 2250(a)(2)(A), and any other person required to register under SORNA who 'travels in interstate or foreign commerce . . . ,' § 2250(a)(2)(B)." *Carr*, 130 S. Ct. at 2238. The only sex offenders not subject to § 2250(a) are those with state convictions who never leave the state in which they were convicted. *See id.*; *accord United States v. Guzman*, 591 F.3d 83, 90 (2d Cir.) (noting that "a sex offender whose underlying conviction was obtained pursuant to state law and who never crosses state lines . . . cannot be criminally liable for failure to comply with SORNA"), *cert. denied*, 130 S. Ct. 3487 (2010).

## B. Facts of Mr. Yelloweagle's Case

In 2005, Mr. Yelloweagle pleaded guilty in the United States District Court for the District of Colorado to abusive sexual conduct in Indian country, in violation of 18 U.S.C. §§ 2244(a)(2) and 1153. He was sentenced to a term of imprisonment of a year and a day, to be followed by a one-year term of supervised release. One of the conditions of Mr. Yelloweagle's supervised release was that he "register with the state sex offender registration agency in the state where [he] resides, works, or is a student." R., Vol. 1, at 105 (J. in Crim. Case, filed Mar. 30, 2005). After his sentencing, but before the expiration of his term of supervised release, Congress enacted SORNA.

Mr. Yelloweagle maintained his registration information in Colorado until May 13, 2007, when he missed a scheduled registration update. He eventually turned up in Oklahoma, where he was implicated in another sex crime. Federal authorities in Colorado subsequently indicted him for violating 18 U.S.C. § 2250(a)(2)(A).[1]

Mr. Yelloweagle moved to dismiss the indictment, contending, *inter alia*, that Congress lacked the power under the Constitution to enact either the registration requirement, § 16913, or the enforcement provision, § 2250(a)(2)(A). First, as to the registration requirement, Mr. Yelloweagle asserted that § 16913 was invalid because it purported to require registration of all sex offenders, regardless of whether they had crossed state lines. He argued that Congress lacked the authority to impose such a requirement under the Commerce Clause, *see* U.S. Const. art. I, § 8, cl. 3 ("The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States, and with the

---

[1]     That Mr. Yelloweagle traveled from Colorado to Oklahoma means that he could have been charged under § 2250(a)(2)(B), which criminalizes the failure to register for any sex offender who "travels in interstate . . . commerce," as well as under § 2250(a)(2)(A), which criminalizes the failure to register for sex offenders "by reason of a conviction under Federal law." The government argued in its brief on appeal that we should affirm Mr. Yelloweagle's conviction under § 2250(a)(2)(B) because of his interstate travel. At oral argument, however, counsel for the United States conceded that, owing to an "oversight," Mr. Yelloweagle was in fact charged only under § 2250(a)(2)(A). *See* Oral Argument at 15:40–16:23. We appreciate and accept this concession and proceed under the view that § 2250(a)(2)(B) is not implicated in this case.

Indian Tribes."), or under any other provision of the Constitution. Because registration under § 16913 is an element of § 2250(a), Mr. Yelloweagle reasoned that if the registration requirement was invalid, then his indictment must be dismissed. Second, even if § 16913 passed constitutional muster, Mr. Yelloweagle argued that § 2250(a)(2)(A) itself was invalid because it purported to criminalize the failure to register by all federal sex offenders. He contended that Congress lacked the power under the Commerce Clause, or any other provision of the Constitution, to enact such a broad enforcement provision.

The district court denied Mr. Yelloweagle's motion, concluding that Congress's authority to criminalize defendants' initial sex offenses empowered it to enact the statute at issue here. "Congress," the district court stated, "does not need to provide any outside source of authority for this legislation." R., Vol. 1, at 203 (Order, filed Dec. 23, 2008). Mr. Yelloweagle subsequently pleaded guilty to violating § 2250(a)(2)(A), but reserved the right to appeal the district court's denial of his motion to dismiss. He filed a timely notice of appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.   DISCUSSION

### A.   Standard of Review

On appeal, Mr. Yelloweagle argues that Congress lacked the authority under the Constitution to enact § 2250(a)(2)(A). This is a legal argument which we review de novo. *See, e.g.*, *United States v. Lawrance*, 548 F.3d 1329, 1332

(10th Cir. 2008) ("In reviewing constitutional challenges to a statute, our review is de novo."); *United States v. Grimmett*, 439 F.3d 1263, 1271 (10th Cir. 2006) ("We review the constitutionality of a statute de novo."); *see also United States v. Cook*, 599 F.3d 1208, 1213 (10th Cir.) ("[W]e review de novo an ultimate question of constitutional law."), *cert. denied*, 131 S. Ct. 331 (2010).

Mr. Yelloweagle appears to be raising a facial challenge to § 2250(a)(2)(A): he argues that Congress lacked the authority to *enact* the law, not that the statute is unconstitutional as applied to him. *See Gonzales v. Raich*, 545 U.S. 1, 23 (2005) (distinguishing facial constitutional challenges under the Commerce Clause, under which "the parties asserted that a particular statute or provision fell outside Congress' commerce power in its entirety," from the challenge then before the Court, under which the litigants "ask[ed] [it] to excise individual applications of a concededly valid statutory scheme"); *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 268 (1981) (resolving "in the context of a facial challenge," the question of "whether Congress, in adopting the [Surface Mining] Act, exceeded its powers under the Commerce Clause of the Constitution"). In any event, Mr. Yelloweagle has not objected to the government's description of his claim as a facial one. *See* Aplee. Br. at 14. Therefore, we are content to assume that Mr. Yelloweagle challenges the constitutional validity of § 2250(a)(2)(A) on its face.

### B. Mr. Yelloweagle Waived His Challenge to § 16913

Because of Mr. Yelloweagle's alleged waiver (i.e., abandonment) on appeal of his challenge to § 16913, the government argues that we may affirm the judgment of the district court under the Necessary and Proper Clause without addressing the lion's share of Mr. Yelloweagle's constitutional arguments. The government points out that, before the district court, Mr. Yelloweagle argued that Congress lacked the authority to enact § 16913 *and* that Congress lacked the authority to enact § 2250(a)(2)(A). According to the government, however, Mr. Yelloweagle has abandoned on appeal his challenge to § 16913, apparently conceding that Congress has the authority to require all sex offenders to register. The government contends that this concession dooms Mr. Yelloweagle's appeal; without a challenge to § 16913, it reasons, we should sustain § 2250(a)(2)(A) under the Necessary and Proper Clause.

To determine if the government is correct, we must answer two questions. First, has Mr. Yelloweagle waived his challenge to § 16913 on appeal? Second, if he has waived his challenge to § 16913, can we sustain § 2250(a)(2)(A) under the Necessary and Proper Clause? We address the first question in this section, and the second question in Part II.C.

### 1. Waiver Principles

Federal Rule of Appellate Procedure 28 provides that an appellant's brief must contain, *inter alia*, "appellant's contentions and the reasons for them." Fed.

R. App. P. 28(a)(9)(A). Under this rule, where a defendant raises an issue before the district court but does not pursue it on appeal, we ordinarily consider the issue waived. *See, e.g.*, *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("Consistent with [Rule 28(a)(9)(A)], we routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."); *Fairchild v. Workman*, 579 F.3d 1134, 1141 n.2 (10th Cir. 2009) ("Generally, the failure to raise an argument in one's initial filing will cause it to be waived."); *see also Vaz Dos Reis v. Holder*, 606 F.3d 1, 4 (1st Cir. 2010) ("When a party disavows a particular theory of the case, it is not an appellate court's proper role to make the disavowed argument for him.").

### 2. Mr. Yelloweagle Waived His Challenge to § 16913 on Appeal

When we compare the arguments Mr. Yelloweagle made before the district with the arguments that he presents to us on appeal, it is plain that Mr. Yelloweagle has waived (i.e., abandoned) his challenge to § 16913 on appeal.

#### a. Arguments before the District Court

Before the district court, the centerpiece of Mr. Yelloweagle's argument for dismissing the indictment was his claim that Congress lacked the power to enact the registration requirement found in § 16913. For example, in his motion to dismiss the indictment, Mr. Yelloweagle contended:

-11-

> Congress lacks the authority to direct all individuals—regardless of whether they traveled in interstate commerce—to register as sex offenders. Because § 16913 is unconstitutional, it cannot be used to trigger any obligation for a prior offender to register under SORNA. In turn, the first element of § 2250 cannot be satisfied, and the indictment must be dismissed.

R., Vol. 1, at 65 (Resubmitted Mot. to Dismiss Indict., filed Oct. 16, 2008); *see also id.* at 62–63 ("Since § 16913 has been improperly enacted by Congress, any criminal prosecution under § 2250(a) predicated on the unconstitutional statu[t]e cannot stand."); *id.* at 67 ("[I]t is clear that Congress does not have the power to impose Title 42's registration requirements on individual citizens who never travel in interstate commerce . . . ." (emphasis omitted)); *id.* at 74–75 ("[T]he registration requirements of SORNA are unconstitutional. As it is necessary for a defendant to be 'required to register under the Sex Offender Registration and Notification Act' in order to violate § 2250, the Indictment against him must be dismissed."). In addition to his primary focus on § 16913, Mr. Yelloweagle also contended that "[e]ven if Congress has the authority to enact the Title 42 registration requirements, the relevant criminal provision of [§ 2250(a)(2)(A)] itself is unconstitutional." *Id.* at 63. But, in his motion to dismiss, he dedicated only one page to the contention that § 2250(a)(2)(A) was unconstitutional in its own right, *see id.* at 75–76, compared with the ten pages he used to argue that § 16913 was invalid, *see id.* at 65–75.

-12-

In its response to Mr. Yelloweagle's motion to dismiss, the government sought to turn the focus away from § 16913 and onto the criminal provision alone. "The defendant," said the government, "is not being charged with violating 42 U.S.C. § 16913. He is being charged with violating 18 U.S.C. § 2250. Thus, the elements of § 2250 are relevant to the Commerce Clause analysis." *Id.* at 85 (Gov't's Combined Resp. to Mot. to Dismiss, filed Oct. 20, 2008). Section 2250 is valid under the Commerce Clause, the government urged, and this provides the jurisdictional hook necessary to sustain Mr. Yelloweagle's indictment. Mr. Yelloweagle rejected the government's approach:

> This is an odd argument for the government to assert, for the elements of § 2250(a)(2)(A)—the statute which Mr. Yelloweagle is charged under—do not require the government to prove that Mr. Yelloweagle traveled in interstate commerce. . . . Therefore, resort to 18 U.S.C. § 2250(a)(2)(A), does not help the government establish that 42 U.S.C. § 16913 is a valid exercise of Congress's Commerce Clause authority.

*Id.* at 150–51 (Reply to Gov't's Combined Resp., filed Nov. 14, 2008). Mr. Yelloweagle reasoned that because *neither* the registration requirement *nor* the criminal enforcement provision contained a jurisdictional hook, Congress lacked the authority to require Mr. Yelloweagle's registration. *Id.* at 151.

The government advanced an additional theory in its next responsive filing, moving away from its reliance on the Commerce Clause and instead arguing that Congress possesses the authority to enact SORNA based on defendants' prior

federal sex offense convictions. Applying this theory, the government pointed out that under the plain terms of § 2250(a)(2)(A) it was a crime for Mr. Yelloweagle to fail to register simply because he was a sex offender "by reason of a conviction under Federal law." *Id.* at 178 (Gov't's Suppl. to Combined Resp. to Mot. to Dismiss, filed Dec. 5, 2008). Because Mr. Yelloweagle "has not raised any issue challenging Congress' authority to enact" the statutes underlying his federal sex offense conviction, the government argued that Congress possesses the authority to enact SORNA without needing to rely on the Commerce Clause. *Id.*

Mr. Yelloweagle responded. Although he did not dispute that Congress had the power to criminalize his original sex crime, he rejected the idea that this initial exercise of jurisdiction gave Congress the authority to enact SORNA. In making this argument, Mr. Yelloweagle continued to emphasize § 16913 as the lynchpin of his challenge to the indictment:

> [R]ecognizing that Mr. Yelloweagle's prior federal conviction was enacted under a constitutional statute says nothing about Congress's power (or lack thereof) to enact a new criminal provision and bring a new federal charge, based on the broad requirement that all prior federal sex offenders must register.

*Id.* at 185 (Def.'s Reply to Gov't's Suppl. Resp., filed Dec. 12, 2008). In a final filing termed "Relevant Authority Concerning Defendant's Motions to Dismiss Indictment," Mr. Yelloweagle again listed as his primary issue the claim that "SORNA's registration requirements, *e.g.* 42 U.S.C. § 16913, violate the

-14-

Commerce Clause." *Id.* at 188 (filed Dec. 12, 2008). As a second and separate issue, however, he did contend that "SORNA's criminal provision, 18 U.S.C. § 2250(a)(2)(A), is unconstitutional; it violates the Commerce Clause, and/or it is an ultra vire[s] congressional enactment." *Id.* In other words, as the exchange of filings came to a close, there was no indication that Mr. Yelloweagle had pivoted from his focus on § 16913.

The district court denied Mr. Yelloweagle's motion to dismiss, adopting the government's last argument and ruling from the bench that "Congress . . . has the inherent authority to make laws such as SORNA that impact anybody who has been found guilty of a federal offense." R., Vol. 2, at 17 (Mot. Hr'g Tr., dated Dec. 22, 2008). The court followed its oral ruling with a written order to the same effect, stating that "Congress plainly has the authority to criminalize the failure to register based on a prior federal sex offense conviction, and . . . Congress does not need to provide any outside source of authority for this legislation." R., Vol. 1, at 203 (Order, filed Dec. 23, 2008). The district court did not identify any provision of the Constitution supporting its conclusion that Congress has "inherent authority" to enact SORNA. However, as counsel for Mr. Yelloweagle seems to have acknowledged at the hearing before the district court, the most sensible basis for this holding is the Necessary and Proper Clause.[2]

_____

[2] In arguing against the logic eventually adopted by the district court,
(continued...)

-15-

## b.    Arguments on Appeal

From the first page of Mr. Yelloweagle's opening brief, it is evident that he has adopted a new litigation strategy before us.  He describes the issue on appeal as follows:

> Does 18 U.S.C. § 2250(a)(2)(A), which criminalizes the failure to register as a sex offender by anyone with a prior conviction for a federal sex offense, exceed the scope of Congress's power under the Constitution?  Stated another way, does the mere fact of a prior federal conviction give Congress the constitutional authority to make a future act or omission of the prior offender a federal crime?

Aplt. Opening Br. at 1.  This statement is not a challenge to Congress's authority to require registration under § 16913.  Nor is it an argument that § 2250(a)(2)(A) is invalid because the failure to register is an element of the criminal statute.  To

_____

[2](...continued)
counsel stated:

> [I]t cannot be . . . that . . . simply . . . because someone at some point or another has had a federal conviction, that they are suddenly subject for all time, in perpetuity . . . to federal jurisdiction based upon that.
>          . . . .
>
>          . . . [T]here might be a temptation to suggest that the [N]ecessary and [P]roper [C]lause would be implicated, but that's got to be associated in some fashion or another with another power.

R., Vol. 2, at 11–12.

-16-

the contrary, this statement neatly presents a discrete question: Does Congress have the power to enact § 2250(a)(2)(A)?

This focus continues through the initial sections of Mr. Yelloweagle's opening brief. In describing the procedural history of the case in the "Statement of Facts," Mr. Yelloweagle focuses exclusively on § 2250(a)(2)(A); he does not mention § 16913. *See id.* at 4 ("Mr. Yelloweagle moved to dismiss the indictment on the ground, among others, that Congress lacked the authority to enact 18 U.S.C. § 2250(a)(2)(A)." (emphasis omitted)); *id.* at 6 ("In fact, Mr. Yelloweagle averred, there is no such constitutional source; the Constitution is devoid of any congressional authorization for a statute such as § 2250(a)(2)(A)."). In the "Summary of Argument," he offers the following preview of his contentions on appeal:

> Mr. Yelloweagle challenges the constitutionality of 18 U.S.C. § 2250(a)(2)(A), a provision of the Sex Offender Registration and Notification Act that criminalizes the failure to register as a sex offender by anyone with a prior federal sex offense conviction. . . .
>
> Unlike other provisions of SORNA, § 2250(a)(2)(A) is outside the scope of Congress's limited power to enact criminal laws. None of the powers of Congress enumerated in the Constitution authorizes its enactment. The statute, therefore, is unconstitutional.

*Id.* at 11. Again Mr. Yelloweagle does not cite § 16913, and his casual references to the registration requirement give no hint that he is arguing—as he did before the district court—that § 16913 is itself invalid.

Any doubt about Mr. Yelloweagle's contentions on appeal is resolved in his "Argument" section, where he explicitly disclaims a challenge to any part of SORNA other than the enforcement provision:

> Mr. Yelloweagle attacks the constitutionality of a discrete provision of the Sex Offender Registration and Notification Act, namely 18 U.S.C. § 2250(a)(2)(A). That provision of the Act criminalizes failure to register by anyone who is a sex offender "by reason of a conviction under Federal law." 18 U.S.C. § 2250(a)(2)(A). It does not require interstate, foreign, or Indian country travel before such failure to register.
>
> Mr. Yelloweagle's challenge is very narrow. He does not challenge SORNA as a whole, and he does not challenge § 2250(a)(2)(B), which, unlike § 2250(a)(2)(A), requires travel in interstate or foreign commerce, or in Indian country.

*Id.* at 12 (emphasis omitted).

Mr. Yelloweagle mentions § 16913 only once in his opening brief, offhandedly observing that "[a]s described in § 2250(a)(1), Mr. Yelloweagle is a person 'required to register under the Sex Offender Registration and Notification Act.' 18 U.S.C. § 2250(a)(1). He was required to register by virtue of SORNA provision 42 U.S.C. § 16913(a) . . . ." *Id.* at 13.

### c. Waiver of § 16913 Challenge

-18-

In light of Mr. Yelloweagle's appellate litigation strategy, the government contends that we should conclude that he has waived (i.e., abandoned) his challenge to the registration requirement. The government portrays Mr. Yelloweagle's argument on appeal as follows:

> Yelloweagle challenges the portion of § 2250 that relates to federal offenders and urges this Court to consider it in isolation from the surrounding statute. Indeed, he explicitly disavows a constitutional challenge to the statute's registration requirement for these offenders and asks this Court to invalidate only its ability to *enforce* the law against them.

Aplee. Br. at 34. In his reply brief, Mr. Yelloweagle does not respond to the government's waiver argument. Although he (belatedly) argues that § 16913 is also invalid, nowhere does he argue that the government has mischaracterized his initial appellate position.

We conclude that Mr. Yelloweagle has indeed waived his challenge to § 16913. There is nothing in Mr. Yelloweagle's opening brief to suggest that he intends to challenge the government's authority to require him to register. Nor is his attack on § 2250(a)(2)(A) structured in such a way that it implicates § 16913. Rather than argue—as he did before the district court—that his prosecution under § 2250(a)(2)(A) is invalid because the registration requirement is invalid, Mr. Yelloweagle simply contends that no provision of the Constitution authorizes § 2250(a)(2)(A). In these circumstances, Mr. Yelloweagle has waived any claim that § 16913 is itself invalid. We cannot make arguments for him. *See, e.g.*,

*Perry v. Woodward*, 199 F.3d 1126, 1141 n.13 (10th Cir. 1999) ("This court . . . will not craft a party's arguments for him.").

     **C.**    **The Necessary and Proper Clause Supports Congress's Authority to Enact § 2250(a)(2)(A)**

Our conclusion above that Mr. Yelloweagle waived his challenge to § 16913 is only the first step of our analysis. The government argues that, if Mr. Yelloweagle waived his challenge to § 16913, then § 2250(a)(2)(A) can be sustained under the Necessary and Proper Clause. Thus, the government contends that Mr. Yelloweagle's argument that Congress lacked the power to enact § 2250(a)(2)(A) must fail. For the reasons below, we agree.

     **1.**    **General Principles**

The United States Constitution—in what is known as the Necessary and Proper Clause—provides that "[t]he Congress shall have Power . . . To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." U.S. Const. art. I, § 8, cl. 18. Early in our history, the Supreme Court—with Chief Justice Marshall writing—held that this clause accords Congress "the right to legislate on that vast mass of incidental powers which must be involved in the constitution, if that instrument be not a splendid bauble." *McCulloch v.*

-20-

*Maryland*, 17 U.S. (4 Wheat.) 316, 421 (1819).  In a passage familiar to all students of constitutional law, the court further explicated the Clause:

> We admit, as all must admit, that the powers of the government are limited, and that its limits are not to be transcended.  But we think the sound construction of the constitution must allow to the national legislature that discretion, with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the high duties assigned to it, in the manner most beneficial to the people.  *Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional*.

*Id.* (emphasis added); *see also United States v. Comstock*, 130 S. Ct. 1949, 1956 (2010) (describing the italicized portion of the above-quoted text as "language that has come to define the scope of the Necessary and Proper Clause").  "[T]he Necessary and Proper Clause makes clear that the Constitution's grants of specific federal legislative authority are accompanied by broad power to enact laws that are 'convenient, or useful' or 'conducive' to the authority's 'beneficial exercise.'" *Comstock*, 130 S. Ct. at 1956 (quoting *McCulloch*, 17 U.S. at 413, 418).

As the Supreme Court recently stated: "[I]n determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, we look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power."  *Id.*; *see also id.* at 1962 (noting "the Constitution's insistence that a

federal statute represent a rational means for implementing a constitutional grant of legislative authority"); *United States v. Plotts*, 347 F.3d 873, 878 (10th Cir. 2003) ("At bottom, then, the Necessary and Proper Clause enables Congress to enact laws, subject to other constitutional constraints, 'that bear a rational connection to any of its enumerated powers.'" (quoting *United States v. Edgar*, 304 F.3d 1320, 1326 (11th Cir. 2002))). "Chief Justice Marshall emphasized that the word 'necessary' does not mean 'absolutely necessary.'" *Comstock*, 130 S. Ct. at 1956 (quoting *McCulloch*, 17 U.S. at 413–15); *see also Plotts*, 347 F.3d at 878 ("The Supreme Court long ago rejected the view that the Necessary and Proper Clause demands that an Act of Congress be *absolutely* necessary to the exercise of an enumerated power." (quoting *Jinks v. Richland Cnty., S.C.*, 538 U.S. 456, 462 (2003)) (internal quotation marks omitted)).

"Congress routinely exercises its authority to enact criminal laws in furtherance of, for example, its enumerated powers to regulate interstate and foreign commerce . . . ." *Comstock*, 130 S. Ct. at 1957; *see id.* at 1969 (Alito, J., concurring) ("The Necessary and Proper Clause provides the constitutional authority for most federal criminal statutes. In other words, most federal criminal statutes rest upon a congressional judgment that, in order to execute one or more of the powers conferred on Congress, it is necessary and proper to criminalize certain conduct . . . ."); *McCulloch*, 17 U.S. at 416 ("All admit, that the government may, legitimately, punish any violation of its laws; and yet, this is

-22-

not among the enumerated powers of congress."); *Plotts*, 347 F.3d at 878 ("The [Supreme] Court has held 'Congress may impose penalties in aid of the exercise of any of its enumerated powers.'" (quoting *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 393 (1940))); *see also United States v. Tom*, 565 F.3d 497, 502 (8th Cir. 2009) ("That Congress has the authority under the Necessary and Proper Clause to criminalize and punish certain activities as a means of effectuating its enumerated powers is beyond dispute."), *cert. denied*, 130 S. Ct. 3319 (2010). "Similarly, Congress, in order to help ensure the enforcement of federal criminal laws enacted in furtherance of its enumerated powers," *Comstock*, 130 S. Ct. at 1958, can erect civil regulatory regimes rationally related to effectuating a "constitutional grant of legislative authority," *id.* at 1962, which the enumerated powers provide. *See id.* at 1963 ("[F]rom the implied power to punish we have *further* inferred both the power to imprison . . . and . . . the federal civil-commitment power." (citation omitted)); *Plotts*, 347 F.3d at 879 n.5 ("Congress has the power to impose nonpunitive sanctions for the violation of criminal statutes.").

In this regard, in *Comstock*, the Supreme Court expressly "reject[ed] [the criminal defendants'] argument that the Necessary and Proper Clause permits no more than a single step between an enumerated power and an Act of Congress." 130 S. Ct. at 1964. The Court in *Comstock* was called upon to determine the validity under the Necessary and Proper Clause of "[a] federal civil-commitment

-23-

statute [that] authorizes the Department of Justice to detain a mentally ill, sexually dangerous federal prisoner beyond the date the prisoner would otherwise be released." *Id.* at 1954; *see* 18 U.S.C. § 4248. The Court concluded that the federal statute, 18 U.S.C. § 4248, "is reasonably adapted to Congress' power to act as a responsible federal custodian (a power that rests, in turn, upon federal criminal statutes that legitimately seek to implement constitutionally enumerated authority)." *Comstock*, 130 S. Ct. at 1961 (citations omitted) (internal quotation marks omitted). The Court specifically concluded that "the links between § 4248 and an enumerated Article I power are not too attenuated." *Id.* at 1963; *see id.* at 1964 ("Indeed even the dissent acknowledges that Congress has the implied power to criminalize any conduct that might interfere with the exercise of an enumerated power, and also the additional power to imprison people who violate those (inferentially authorized) laws, and the additional power to provide for the safe and reasonable management of those prisons, and the additional power to regulate the prisoners' behavior even after their release."). We now apply these principles to the circumstances before us.

### 2. If § 16913 Is Assumed to be Valid, Then the Necessary and Proper Clause Gives Congress the Authority to Enact § 2250(a)(2)(A)

On appeal the government contends that

where, as here, the issue is one of congressional *power*, the power to enforce a regulation follows from the power to regulate that activity in the first place. For example, because Congress has power to enact the federal tax code, it necessarily has the power to penalize failure to comply. Indeed, the power to regulate would be toothless without the corresponding power of enforcement. Thus, Yelloweagle's argument is flawed. He does not contest Congress's power to require all sex offenders to register under § 16913 . . . . Yet he suggests that somehow Congress may not enforce that power against a subset of those offenders (non-traveling federal offenders) under § 2250. If Congress has the broader power to require registration, it follows naturally that it has the narrower power to enforce it. And it cannot be said that Congress's constitutional reach extends to a certain class of citizens (non-traveling federal offenders) for regulation purposes but falls short for enforcement purposes.

Aplee. Br. at 35–36 (citations omitted).

The government's logic is cogent and, under the factual and procedural circumstances presented here, it leads us ineluctably to the conclusion that Mr. Yelloweagle cannot prevail on his Commerce Clause challenge to § 2250(a)(2)(A). As we concluded in Part II.B, *supra*, Mr. Yelloweagle has abandoned on appeal his Commerce Clause challenge to the registration regime of § 16913. Therefore, we may assume without deciding that Congress has the authority under the Commerce Clause to require all sex offenders to register and keep their registration current, including federal sex offenders who only travel intrastate. Given that assumption, under the jurisprudence of the Necessary and Proper Clause, it naturally follows that Congress can enact criminal statutes calculated to enforce that registration scheme. *See Comstock*, 130 S. Ct. at 1957.

-25-

The nature of our inquiry is narrowed, then, to whether § 2250(a)(2)(A) can be said to be "rationally related" to the enforcement of Congress's sex offender registration scheme embodied in § 16913. For reasons noted below, we answer in the affirmative.

In material respects, this case is akin to our decision in *Plotts*. There, we reviewed a constitutional challenge to 18 U.S.C. § 3583(d), which we called the "DNA Act." *Plotts*, 347 F.3d at 875. This statute required Mr. Plotts, as a condition of his supervised release, "to cooperate in the collection of his DNA." *Id.* Mr. Plotts challenged the law, contending that it was invalid under the Commerce Clause and thus was an impermissible "exercise of plenary police power, a power which Congress lacks." *Id.* at 877. We did not reach his argument under the Commerce Clause. We observed that "the Commerce Clause empowers Congress to criminalize the receipt of child pornography over the Internet—the crime to which Mr. Plotts pleaded guilty." *Id.* at 879 (citing *United States v. Kimler*, 335 F.3d 1132, 1139 (10th Cir. 2003)). Further, we observed that "pursuant to the Necessary and Proper Clause, Congress may fashion penalties for the violation of valid federal laws." *Id.* In this regard, we construed the DNA Act to be a "civil sanction." *Id.* at 878; *see also id.* at 879 n.5 ("Congress has the power to impose nonpunitive sanctions for the violation of criminal statutes."). Ultimately, we held that Congress was authorized to enact the DNA Act as "a necessary and proper sanction to a valid criminal law" (i.e.,

the child pornography offense).  *Id.* at 879; *see also id.* at 878 ("Congress has . . . discretion as to what sanctions shall be imposed for the enforcement of the law and this discretion is unlimited so long as the method of enforcement does not impinge upon some other constitutional prohibition." (quoting *Rodgers v. United States*, 138 F.2d 992, 994–95 (6th Cir. 1943)) (internal quotation marks omitted)).

Significantly, our Necessary and Proper Clause analysis in *Plotts* was predicated on Congress's undisputedly valid exercise of its Commerce Clause power in enacting the Internet child pornography statute at issue.  Because this law was undisputedly valid under the Commerce Clause, it was unnecessary for us to decide whether the DNA Act was independently viable as an exercise of Congress's Commerce Clause authority.  The DNA Act could be upheld under the Necessary and Proper Clause if it was rationally related to the "[criminal] penalt[y] for the violation of [a] valid federal law[]," *id.* at 879—that is, as an additional rationally related sanction for a violation of the child pornography law. And, as noted, we decided that it could be upheld, specifically "conclud[ing] that the DNA Act, if construed as a civil sanction, is necessary and proper to the exercise of the Commerce Clause." *Id.*  Put another way, given that the child pornography statute at issue in *Plotts* was "legitimately predicated on an enumerated power" (i.e., the Commerce Clause), *Comstock*, 130 S. Ct. at 1964, we only had to determine whether the DNA Act—a statute that was one *more* step removed from the enumerated power—was rationally related to the effectuation of

-27-

that criminal statute and, thus, consonant with "the Constitution's insistence that a federal statute represent a rational means for implementing a constitutional grant of legislative authority," *id.* at 1962. We concluded in *Plotts* that the DNA Act satisfied this rational-relation test.

As in *Plotts*, we have before the court an undisputedly valid exercise of Congress's Commerce Clause power—*viz.*, the sex offender registration scheme of § 16913. In *Plotts*, the statute's validity was undisputed because we "ha[d] already established," as a matter of precedent, that Congress had the authority under the Commerce Clause to criminalize the Internet child pornography offense at issue. In the instant case, the statute's validity is undisputed because on appeal Mr. Yelloweagle has abandoned his Commerce Clause challenge to § 16913. This abandonment leaves us free to assume without deciding that Congress could validly enact § 16913 under its enumerated Commerce Clause power. Therefore, for decisional purposes, we are similarly situated to the court in *Plotts*. Specifically, we need not determine whether § 2250(a)(2)(A) would be independently viable as an exercise of Congress's Commerce Clause authority. If we are able to determine that the statute is rationally related to the enforcement of the registration regime of § 16913, we may uphold § 2250(a)(2)(A) under the Necessary and Proper Clause. As in *Plotts*, we conclude that we may uphold the statute at issue—§ 2250(a)(2)(A)—under the Necessary and Proper Clause.

It seems beyond peradventure that the criminal enforcement provision of § 2250(a)(2)(A) is "rationally related or reasonably adapted to the effectuation" of the sex offender registration regime of § 16913. *United States v. Kebodeaux*, 634 F.3d 293, 297 (5th Cir. 2011) (citing *Comstock*, 130 S. Ct. at 1956). Section 2250(a)(2)(A) "clearly was not enacted as a stand-alone provision, but rather as a complement to [SORNA's] other provisions." *Id.* at 301 (Dennis, J., concurring); *see Carr*, 130 S. Ct. at 2240 (noting that § 2250's criminal enforcement provision "is not a stand-alone response to the problem of missing sex offenders"); *Kebodeaux*, 634 F.3d at 304 (Dennis, J. concurring) (noting that § 2250(a)(2)(A) is "a necessary and integral part of the commerce-clause-based SORNA"); *see also United States v. Sanders*, 622 F.3d 779, 783 (7th Cir. 2010) ("Imposing a duty to register as a matter of federal law would do little to solve the problem of sex offenders slipping through the cracks absent the enforcement mechanism supplied by [§] 2250."), *cert. denied*, 131 S. Ct. 1033 (2011). In particular, in a concurring opinion in *Kebodeaux*, Judge Dennis highlighted the relationship between § 2250(a)(2)(A) and the registration regime of § 16913:

> SORNA gave "the States primary responsibility for supervising and ensuring compliance among state sex offenders." Congress did not delegate to the states, however, the additional responsibility of prosecuting sex offenders convicted under federal law who fail to update their registrations after in-state residence changes. Rather, SORNA makes such an intra-state re-registration failure a federal offense amenable to prosecution by the federal government. Section 2250(a)(2)(A) helps to make

SORNA's regulation of interstate commerce effective by obviating potential sources of interference or disruption of that objective. For example, had Congress not criminalized federal sex offenders' undocumented, intra-state residence changes, there would [be] no deterrence to their moving intra-state without re-registering. This would have caused disparate and delayed enforcement of SORNA against federal sex offenders, allowing them to establish residences in some states as apparent law abiders, which would have made them difficult to monitor either in-state or in interstate commerce.

*Kebodeaux*, 634 F.3d at 299 (footnote omitted) (quoting *Carr*, 130 S. Ct. at 2238).[3]

Mr. Yelloweagle has marshaled no specific arguments to contradict this analysis. To the contrary, at oral argument, counsel for Mr. Yelloweagle acknowledged that it was "of course, correct" that the Necessary and Proper

---

[3] Although explicitly acknowledging that § 2250(a)(2)(A) is "a necessary an integral part of the commerce-clause-based SORNA," *Kebodeaux*, 634 F.3d at 304 (Dennis, J., concurring), Judge Dennis's analysis under the Necessary and Proper Clause led him to focus on the extent to which § 2250(a)(2)(A) is "necessary and proper to make § 2250(a)(2)(B) effective as a regulation of interstate commerce," *id.* at 299. In particular, he noted:

I conclude that § 2250(a)(2)(A)'s application to intra-state violations of SORNA by sex offenders convicted under federal law is necessary and proper to, that is, rationally related and reasonably adapted to, § 2250(a)'s other subsection, § 2250(a)(2)(B), which we have already upheld as a proper exercise of the Commerce Clause power.

*Id.* at 304. The government in this case, however, has not advanced such an argument. Therefore, we offer no view on whether any purported necessary-and-proper nexus between § 2250(a)(2)(A) and (a)(2)(B) would be in itself sufficient to uphold the constitutionality of § 2250(a)(2)(A).

Clause authorizes Congress to enact criminal penalties to punish violations of other valid laws. Oral Argument at 5:50–5:55. Counsel did suggest that the Necessary and Proper Clause might require a greater quantum of constitutional authority when Congress seeks to enact a criminal, rather than civil, statute. *See id.* at 6:12–6:32 ("[T]here is a particularly sharp division in the Constitution there because the regulation and suppression of violent crime is an area traditionally left to the states, not the federal government. . . . So I think that some part of my argument would remain . . . ."). We understand counsel's argument, but must reject it. We are aware of no authority to support the idea that we should give the Necessary and Proper Clause a stricter construction when reviewing Congress's enactment of criminal provisions.

In sum, Mr. Yelloweagle contends that Congress lacked the authority under the Commerce Clause to enact § 2250(a)(2)(A). On appeal, Mr. Yelloweagle has waived (i.e., abandoned) a similar Commerce Clause challenge to the sex offender registration requirements of § 16913. Therefore, we may operate on the assumption that § 16913 is a valid exercise of Congress's power under the Commerce Clause. Doing so, we conclude that Congress has the authority under the Necessary and Proper Clause to enact § 2250(a)(2)(A) in order to criminally enforce its validly enacted registration provision, § 16913. Thus, Mr. Yelloweagle's facial attack on § 2250(a)(2)(A) fails.

## III.   CONCLUSION

The issue that Mr. Yelloweagle has asked us to consider is whether Congress has the authority to enact 18 U.S.C. § 2250(a)(2)(A).  In the circumstances of this appeal, the answer to that question is clear:  Because we assume that 42 U.S.C. § 16913 is valid, the Necessary and Proper Clause authorizes Congress to enact § 2250(a)(2)(A) in order to enforce § 16913.  Therefore, we **AFFIRM** Mr. Yelloweagle's conviction.