DENNIS, Circuit Judge,
concurring in the judgment and assigning reasons:
Defendant Anthony Kebodeaux, a federally-adjudged sex offender, was convicted of knowingly failing to update his sex offender registration after his intra-state change of residence (from El Paso to San Antonio, Texas) as required by the Sex Offender Registration and Notification Act (“SORNA”), 18 U.S.C. § 2250(a)(2)(A) and 42 U.S.C. § 16913. He was sentenced to twelve months and one day of imprisonment. On appeal, he argues that the Constitution does not grant Congress the authority to enact § 2250(a)(2)(A) because that provision regulates purely intra-state activities, rather than any aspect of Congress’s proper domain of interstate commerce. I conclude, however, that § 2250(a)(2)(A) is constitutional because it is not a stand-alone statute, but is part of SORNA and necessary to make SORNA effective in regulating the channels of, and persons in, interstate commerce.
Under § 2250(a)(2)(B), SORNA makes it a federal offense for a sex offender convicted under state or federal law to knowingly fail to update his SORNA registration after traveling in interstate commerce. This court and others have consistently held that § 2250(a)(2)(B) is a constitutional execution of Congress’s power to regulate the channels of, and persons in, interstate commerce.[1] Kebodeaux does not question those holdings or the constitutionality of § 2250(a)(2)(B). He argues only that § 2250(a)(2)(A), in isolation, is unconstitutional because it is an invalid attempt by Congress to regulate intra-state activities, rather than interstate commerce.
Kebodeaux’s challenge is without merit because § 2250(a)(2)(A) is an integral part of SORNA, rather than a stand-alone provision, and, as such, it is a constitutional regulation of intra-state activities that is necessary and proper to make SORNA, particularly § 2250(a)(2)(B), effective as a regulation of interstate commerce. As structured, SORNA is designed to “address the deficiencies in prior law that had enabled sex offenders to slip through the cracks” by moving interstate.[2] It rec *147 ognizes that “‘every state ha[s] enacted some’ type of [sex offender] registration system”[3] and that “Congress ... conditioned certain federal funds on States’ adoption of ‘criminal penalties’ on any person ‘required to register under a State program ... who knowingly fails to so register and keep such registration current.’”[4] In this manner, SORNA gave “the States primary responsibility for supervising and ensuring compliance among state sex offenders.”[5] Through § 2250(a)(2)(B), however, it “exposed to federal criminal liability ... persons required to register under SORNA ... who threaten the efficacy of the statutory scheme by traveling in interstate commerce.”[6] Moreover, Congress did not delegate to the states the additional responsibility of prosecuting sex offenders convicted under federal law who fail to update their registrations after in-state residence changes. Rather, SORNA makes such an intra-state re-registration failure a federal offense amenable to prosecution by the federal government. Accordingly, § 2250(a)(2)(A) helps to make SORNA’s regulation of interstate commerce effective by obviating potential sources of interference or disruption of that objective. For example, had Congress not criminalized federal sex offenders’ undocumented, intra-state residence changes, there would be no deterrence to their moving intra-state without re-registering. This would have caused disparate and delayed enforcement of SORNA against federal sex offenders, allowing them to establish residences in some states as apparent law abiders, which would have made them difficult to monitor either in-state or in interstate commerce.
I.
On April 2, 2008, a federal grand jury indicted Kebodeaux on one count of violating SORNA, 18 U.S.C. § 2250(a).[7] Section 2250(a) provides for up to ten years’ imprisonment for:
Whoever—
(1) is required to register under the Sex Offender Registration and Notification Act;
(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by rea *148 son of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act.
Thus, “Section 2250 imposes criminal liability on two categories of persons who fail to adhere to SORNA’s registration [and updating] requirements: any person who is a sex offender ‘by reason of a conviction under Federal law, the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States,’ § 2250(a)(2)(A), and any other person required to register under SORNA who ‘travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country,’ § 2250(a)(2)(B).” Carr v. United States, — U.S. -, 130 S.Ct. 2229, 2238, 176 L.Ed.2d 1152 (2010) (alteration omitted). Accordingly, “[f]or persons convicted of sex offenses under federal or Indian tribal law, interstate travel is not a prerequisite to § 2250 liability.” Id. at 2235 n. 3 (citing § 2250(a)(2)(A)).
Kebodeaux narrowly focuses his challenge exclusively on § 2250(a)(2)(A)’s punishment of a federal sex offender for knowingly failing to update his registration after an intra-state relocation. He concedes the constitutional validity of the balance of SORNA’s provisions.
II.
Yet, as the Supreme Court recently explained in Carr v. United States — holding that “[l]iability under § 2250[(a)(2)(B) ] ... cannot be predicated on pre-SORNA travel,” 130 S.Ct. at 2233 — “Section 2250 is not a stand-alone response to the problem of missing sex offenders; it is embedded in [the] broader statutory scheme” of the Adam Walsh Child Protection and Safety Act of 2006, Pub.L. No. 109-248, 120 Stat. 587, which was “enacted to address the deficiencies in prior law that had enabled sex offenders to slip through the cracks” of state-based sex offender registration systems. Carr, 130 S.Ct. at 2240 (also quoting 42 U.S.C. § 16901 for the proposition that “ ‘Congress in this chapter establishes a comprehensive national system for the registration of [sex] offenders’ ” (alteration in original)); see also, e.g., United States v. Whaley, 577 F.3d 254, 259 (5th Cir.2009) (“SORNA[] focus[es] on the problem of sex offenders escaping their registration requirements through interstate travel ----”); United States v. Ambert, 561 F.3d 1202, 1212 (11th Cir.2009) (Congress enacted SORNA “to create an interstate system to counteract the danger posed by sex offenders who slip through the cracks or exploit a weak state registration system by traveling or moving to another state without registering therein.’ ” (citing 42 U.S.C. § 16901)).
Accordingly, in Carr, the Supreme Court described how SORNA’s various sections work together to further the joint state-federal goals of comprehensive identification and registration of all state and federal sex offenders and punishing those who knowingly avoid updating their registrations:
Among its many provisions, SORNA instructs States to maintain sex-offender registries that compile an array of information about sex offenders, [42 U.S.C.] § 16914; to make this information publicly available online, § 16918; to share the information with other jurisdictions and with the Attorney General for inclusion in a comprehensive national sex- *149 offender registry, §§ 16919-16921; and to “provide a criminal penalty that includes a maximum term of imprisonment that is greater than 1 year for the failure of a sex offender to comply with the requirements of this subchapter,” § 16913(e). Sex offenders, in turn, are required to “register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student,” § 16913(a), and to appear in person periodically to “allow the jurisdiction to take a current photograph, and verify the information in each registry in which that offender is required to be registered,” § 16916.
Carr, 130 S.Ct. at 2240-41. The Court continued, “By facilitating the collection of sex-offender information and its dissemination among jurisdictions, these provisions, not § 2250, stand at the center of Congress’ effort to account for missing sex offenders.” Id. at 2241. Therefore, 28 U.S.C. § 2250(a)(2)(A), a subsection of that same statute, clearly was not enacted as a stand-alone provision, but rather as a complement to the Act’s other provisions. Cf. Whaley, 577 F.3d at 259 (stating that § 2250 is “complementary” to SORNA’s registration requirements in § 16913 (citing United States v. Dixon, 551 F.3d 578, 582 (7th Cir.2008))).
III.
The Necessary and Proper Clause of the Constitution gives Congress the power “[t]o make all Laws which shall be necessary and proper for carrying into Execution” the enumerated powers. U.S. Const, art. 1, § 8, cl. 18. Specifically, in respect to effectuating the Commerce Clause power, the Supreme Court has explained that the Necessary and Proper Clause provides Congress the authority to enact “comprehensive legislation to regulate the interstate market” even when that “regulation ensnares some purely intrastate activity.” Gonzales v. Raich, 545 U.S. 1, 22, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005). In Raich, the Court held that under the Controlled Substances Act (“CSA”), 21 U.S.C. § 801 et seq., through the Necessary and Proper Clause power to effectuate the Commerce Clause authority, Congress could regulate the intra-state production of marijuana as “Congress could have rationally concluded that the aggregate impact on the national market of all the” regulated intra-state activities “is unquestionably substantial.” 545 U.S. at 32, 125 S.Ct. 2195.
In Raich, Justice Scalia concurred in the judgment and wrote separately to explain that, although he “agree[d] with the Court’s holding that the [CSA] may validly be applied to respondents’ [intra-state] cultivation, distribution, and possession of marijuana for personal, medicinal use,” his “understanding of the doctrinal foundation on which that holding rests is, if not inconsistent with that of the Court, at least more nuanced.” Id. at 33, 125 S.Ct. 2195 (Scalia, J., concurring in the judgment). He explained that the combination of the Necessary and Proper Clause power and the Commerce Clause authority means that “Congress’s authority to enact laws necessary and proper for the regulation of interstate commerce is not limited to laws directed against economic activities that have a substantial effect on interstate commerce .... [Congress can] regulate[ ] [non-economic activities] as ‘an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated.’ ” Id. at 36, 125 S.Ct. 2195 (quoting United States v. Lopez, 514 U.S. 549, 561, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995)). “The relevant question is simply whether the means chosen are ‘reasonably adapted ’ to the attainment of a legitimate end under the commerce *150 power.” Id. at 37, 125 S.Ct. 2195 (emphasis added) (quoting United States v. Darby, 312 U.S. 100, 121, 61 S.Ct. 451, 85 L.Ed. 609 (1941)).
Justice Scalia based his interpretation on a long line of Supreme Court precedents. Id. at 34, 125 S.Ct. 2195 (citing Katzenbach v. McClung, 379 U.S. 294, 301-02, 85 S.Ct. 377, 13 L.Ed.2d 290, (1964); United States v. Wrightwood Dairy Co., 315 U.S. 110, 119, 62 S.Ct. 523, 86 L.Ed. 726 (1942); Shreveport Rate Cases, 234 U.S. 342, 353, 34 S.Ct. 833, 58 L.Ed. 1341 (1914); United States v. E.C. Knight Co., 156 U.S. 1, 39-40, 15 S.Ct. 249, 39 L.Ed. 325 (1895) (Harlan, J., dissenting); United States v. Coombs, 37 U.S. (12 Pet.) 72, 78, 9 L.Ed. 1004 (1838)). Moreover, he explained, “[W]e implicitly acknowledged in Lopez ... [that] Congress’s authority to enact laws necessary and proper for the regulation of interstate commerce is not limited to laws directed against economic activities that have a substantial effect on interstate commerce. Though the conduct in Lopez was not economic, the Court nevertheless recognized that it could be regulated as ‘an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated.’ ” Id. at 36, 125 S.Ct. 2195 (quoting Lopez, 514 U.S. at 561, 115 S.Ct. 1624). “This statement referred to those cases permitting the regulation of intrastate activities ‘which in a substantial way interfere with or obstruct the exercise of the granted power.’ ” Id. (quoting Wrightwood Dairy Co., 315 U.S. at 119, 62 S.Ct. 523) (citing Darby, 312 U.S. at 118-19, 61 S.Ct. 451; Shreveport Rate Cases, 234 U.S. at 353, 34 S.Ct. 833). “As the Court put it in Wrightwood Dairy, where Congress has the authority to enact a regulation of interstate commerce, ‘it possesses every power needed to make that regulation effective.’ ” Id. (quoting Wrightwood Dairy, 315 U.S. at 118-19, 62 S.Ct. 523). “Although this power ‘to make ... regulation effective’ commonly overlaps with the authority to regulate economic activities that substantially affect interstate commerce, and may in some cases have been confused with that authority, the two are distinct. The regulation of an intrastate activity may be essential to a comprehensive regulation of interstate commerce even though the intrastate activity does not itself ‘substantially affect’ interstate commerce. Moreover, as the passage from Lopez quoted above suggests, Congress may regulate even noneconomic local activity if that regulation is a necessary part of a more general regulation of interstate commerce.” Id. at 37, 125 S.Ct. 2195 (alteration in original) (footnote omitted) (citing Lopez, 514 U.S. at 561, 115 S.Ct. 1624). “The relevant question is simply whether the means chosen are ‘reasonably adapted ’ to the attainment of a legitimate end under the commerce power.” Id. (emphasis added) (quoting Darby, 312 U.S. at 121, 61 S.Ct. 451).
In United States v. Comstock, — U.S. -, 130 S.Ct. 1949, 176 L.Ed.2d 878 (2010), the majority of the Supreme Court confirmed Justice Scalia’s view that the Necessary and Proper Clause empowers Congress to enact legislation that is “reasonably adapted” to effectuating an enumerated power. Specifically, in Comstock, the Supreme Court upheld a federal civil-commitment statute that “authorizes the Department of Justice to detain a mentally ill, sexually dangerous federal prisoner beyond the date the prisoner would otherwise be released. 18 U.S.C. § 4248.” 130 S.Ct. at 1954. The Court concluded that Congress had such power based upon the Necessary and Proper Clause’s authorization to implement the Commerce Clause and other enumerated powers. Id. It *151 explained that to determine whether a statute was a constitutional exercise of the Necessary and Proper Clause power, “we look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power.” Id. at 1956 (emphasis added); see also id. at 1962 (stating that the statute is constitutional under the Clause if it “represents] a rational means for implementing a constitutional grant of legislative authority”). The civil-commitment statute was constitutional, therefore, as it was “‘reasonably adapted’ to Congress’ power to act as a responsible federal custodian!,] a power that rests, in turn, upon federal criminal statutes that legitimately seek to implement constitutionally enumerated authority,” including the Commerce Clause power. Id. at 1961 (emphasis added) (citation omitted) (quoting Darby, 312 U.S. at 121, 61 S.Ct. 451); see id. at 1964 (stating that criminal statutes “often, but not exclusively” rely on the “Commerce Clause power”).
The Comstock majority described five factors it considered in holding that the civil-commitment statute was constitutional: “(1) the breadth of the Necessary and Proper Clause, (2) the long history of federal involvement in [legislating in relation to ‘prison-related mental health statutes,’ like the one at issue in Comstock, id. at 1958], (3) the sound reasons for the statute’s enactment ..., (4) the statute’s accommodation of state interests, and (5) the statute’s narrow scope.” Id. at 1965. However, the majority opinion demonstrates that these factors are merely ways of rephrasing or implementing the notion that Congress may pass laws rationally related or reasonably adapted to the effectuation of enumerated powers. For example, in discussing the first factor, the Court wrote: “We have ... made clear that, in determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, we look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power.” Id. at 1956. Regarding the second factor, the Court explained that the history of federal involvement in an area could not on its own “demonstrate a statute’s constitutionality”; instead, the Court stated that it was a means of analyzing “the reasonableness of the relation between the new statute and pre-existing federal interests.” Id. at 1958. Similarly, in expounding the third factor, the Court stated that a court should find the reasons for a statute sound if they “satisf[y] the Constitution’s insistence that a federal statute represent a rational means for implementing a constitutional grant of legislative authority.” Id. at 1962.
Other jurists and commentators have also read the Comstock majority as holding that a statute that is “rationally related” or “reasonably adapted” to an enumerated power is a constitutional expression of the Necessary and Proper Clause power. See id. at 1966 (Kennedy, J., concurring in the judgment) (“The Court concludes that, when determining whether Congress has the authority to enact a specific law under the Necessary and Proper Clause, we look ‘to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power.’ ” (quoting id. at 1956 (majority opinion))); United States v. Yelloweagle, 643 F.3d 1275, 2011 WL 1632095, at *9 (10th Cir. May 2, 2011) (stating that a statute was constitutional under the Necessary and Proper Clause because it “represent[ed] a rational means for implementing a constitutional grant of legislative authority” (quoting Comstock, 130 S.Ct. at 1962) (internal *152 quotation marks omitted)); United States v. Pendleton, 636 F.3d 78, 87 (3d Cir.2011) (stating that in light of Com-stock, to determine whether a statute is constitutional under the Necessary and Proper Clause, “the relevant inquiry is simply whether the means chosen are reasonably adapted to the attainment of a legitimate end under the commerce power or under other powers that the Constitution grants Congress the authority to implement” (quoting Comstock, 130 S.Ct. at 1957) (internal quotation marks omitted)); United States v. Belfast, 611 F.3d 783, 804 (11th Cir.2010) (stating that Comstock holds that to determine whether “the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, we look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power” (quoting Comstock, 130 S.Ct. at 1956) (internal quotation marks omitted)); Al-Bihani v. Obama, 619 F.3d 1, 25 n. 11 (D.C.Cir.2010) (Kavanaugh, J., concurring in the denial of rehearing en banc) (suggesting the same reading of Comstock); Mead v. Holder, 766 F.Supp.2d 16, 33 (D.D.C.2011) (“Courts look to see whether the challenged statute constitutes a means that is ‘rationally related to the implementation of a constitutionally enumerated power’ when determining whether it falls within Congress’s power under the Necessary and Proper Clause.” (quoting Comstock, 130 S.Ct. at 1956)); Virginia ex rel. Cuccinelli v. Sebelius, 702 F.Supp.2d 598, 611 (E.D.Va.2010) (“[T]he relevant inquiry is simply whether the means chosen are reasonably adapted to the attainment of a legitimate end under the commerce power or under other powers that the Constitution grants Congress the authority to implement.” (alteration in original) (quoting Comstock, 130 S.Ct. at 1957) (internal quotation marks omitted));[8] 16A Am. Jur.2d Constitutional Law § 343 (2011) (“In determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, the court looks to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power.” (citing Comstock, — U.S. -, 130 S.Ct. 1949, 176 L.Ed.2d 878)); Robert R. Harrison, Health Care Reform in the Federal Courts, 57 Fed. Law., Sept. 2010, at 52, 56 (“In Com-stock, the Court noted that the scope of the Necessary and Proper Clause is limited by the inquiry ‘whether the means chosen are reasonably adapted to the attainment of a legitimate end under the commerce power or other powers that the Constitution grants Congress the authority to implement.’ ” (quoting Comstock, 130 S.Ct. at 1956-57)).[9]
*153 IV.
Accordingly, I conclude that § 2250(a)(2)(A)’s application to intra-state violations of SORNA by sex offenders convicted under federal law is necessary and proper to — that is, rationally related and reasonably adapted to — SORNA’s statutory scheme, which is designed to regulate the interstate movement of sex offenders, using Congress’s Commerce Clause power. See Carr, 130 S.Ct. at 2240 (citing 42 U.S.C. § 16901). In particular, I conclude that § 2250(a)(2)(A) is a constitutional exercise of Congress’s Necessary and Proper Clause power because it is rationally related and reasonably adapted to § 2250(a)’s other subsection, § 2250(a)(2)(B), which we have already upheld as a proper exercise of the Commerce Clause power. Whaley, 577 F.3d at 258. For these reasons, I agree that the judgment of the district court must be affirmed.
Although I agree with the majority in affirming the judgment of the district court, I cannot join the majority opinion because it departs from the doctrinal framework established by the Supreme Court for analyzing Commerce Clause legislation, such as SORNA and its provisions that are at issue in the present case. Contrary to the clear teachings of the Supreme Court in Carr and this court in Whaley, the majority interprets § 2250(a)(2)(A) as a stand-alone statute that is rationally related only to a preexisting military penal statute, rather than as a necessary and integral part of the Commeree-Clause-based SORNA. Majority Op. 144 (stating that § 2250(a)(2)(A) does not reflect “any federal concern about [federal sex offenders’] impact on or relationship to the nationwide registration scheme” that SORNA was designed to create). By trying to justify SORNA’s § 2250(a)(2)(A) as rationally related to the military law under which Kebodeaux was convicted and imprisoned, rather than reasonably adapted to SORNA’s regulation of interstate commerce, which § 2250(a)(2)(A) was enacted with and made an integral part of, the majority relies upon an altogether different legislative power that is, at best, only tangentially related to SORNA’s registration requirement. Consequently, I believe that the majority has fallen into serious error in reading Comstock to arrogate vast revisionary powers to judges, allowing them to uphold as necessary and proper any piece of legislation, regardless of the vehicle by which Congress enacted it, so long as the judges can in retrospect see a rational relationship between that law and some enumerated power.
Contrary to the majority’s assertion, United States v. George, 625 F.3d 1124 (9th Cir.2010), provides no support for its reasoning. See Majority Op. 140-41. George addressed the constitutionality of § 2250(a)(2)(A) in response to the defendant’s claim that the provision fell “outside of Congress’s commerce clause powers.” 625 F.3d at 1129. The panel then stated that “Congress had the power under its broad commerce clause authority to enact the SORNA.” George, 625 F.3d at 1130.[10] It explained that the Commerce Clause power includes the authority “to make all laws that are ‘necessary and proper’ for the accomplishment of [Congress’s] commerce clause power,” id. at 1129 (quoting *154 U.S. Const, art. I, § 8, cl. 18), which in turn includes regulating “intrastate activity that has a substantial effect on interstate commerce,” id. (citing Wickard v. Filburn, 317 U.S. 111, 125, 63 S.Ct. 82, 87 L.Ed. 122 (1942)).
The George panel further quoted Carr, 130 S.Ct. at 2238, for the proposition that “it is entirely reasonable for Congress to have assigned to the federal government a special role in ensuring compliance with SORNA’s registration requirements by federal sex offenders — persons who typically would have spent time under federal criminal supervision.” Id. at 1130. Immediately after this, the George panel also stated: “Compare United States v. Comstock, — U.S. -, 130 S.Ct. 1949, 176 L.Ed.2d 878 (2010) (upholding under the Necessary and Proper Clause a statute that provided for the civil commitment of sexually dangerous federal prisoners beyond the date they would otherwise be released).” Id. Thus, rather than holding that § 2250(a)(2)(A) is constitutional because it is rationally related and reasonably adapted to a “federal interest in a federal convict” — as the majority reads the opinion, Majority Op. 145 (citing George, 625 F.3d at 1130) — George performed the analysis I suggest above, acknowledging that § 2250(a)(2)(A) is part of the broader SORNA statutory scheme, whose aim is to regulate sex offenders’ interstate movement, and upholding § 2250(a)(2)(A) as a necessary and proper extension of that scheme. In doing so, it relied on the reasoning of Comstock, in which a majority of the Justices approved Justice Scalia’s Commerce Clause analysis in Raich. See also United States v. Ross, 778 F.Supp.2d 13, at 27, 2011 WL 1481394, at *13 (D.D.C. Apr.19, 2011) (citing George, 625 F.3d at 1130, in support of the statement that “[t]he Court agrees with ‘every circuit that has examined the issue in concluding that § 2250 is a legitimate exercise of congressional Commerce Clause authority.’ ” (alteration omitted) (quoting United States v. Guzman, 591 F.3d 83, 90 (2d Cir.2010))); United States v. Cotton, 760 F.Supp.2d 116, 139-40 (D.D.C.2011) (same).
What is more, the Tenth Circuit has now upheld § 2250(a)(2)(A) as constitutional on the same ground that I urged in my previous concurring opinion. United States v. Yelloweagle, 643 F.3d 1275, 2011 WL 1632095 (10th Cir. May 2, 2011). In that case, Yelloweagle “was previously convicted of a federal sex offense,” “failed to register as required [by SORNA], [and] was indicted by federal authorities under the [SORNA] enforcement provision,” § 2250(a)(2)(A). Id. at 1276. On appeal, “Yelloweagle contended that [§ 2250(a)(2)(A) ] lacked a jurisdictional basis and therefore was unconstitutional.” Id. Citing and quoting that Kebodeaux concurring opinion, the Tenth Circuit concluded that § 2250(a)(2)(A) was constitutional because it was necessary and proper to facilitate SORNA’s constitutional regulation of sex offenders’ interstate movement, which was authorized by Congress’s power under the Commerce Clause. Id. at 1287-88 (also quoting United States v. Kebodeaux, 634 F.3d 293, 301 (5th Cir.2011) (Dennis, J. concurring in the judgment), for the proposition “that § 2250(a)(2)(A) is ‘a necessary and integral part of the commerce-clause-based SORNA’ ”).
The Tenth Circuit in Yelloweagle reached this conclusion by first surveying “The Sex Offender Registration and Enforcement Regime.” Id. at 1277. As a result, it recognized that SORNA was enacted as a comprehensive statutory scheme “to keep track of sex offenders” who move interstate. Id. at 1277 (quoting George, 625 F.3d at 1129) (internal quota *155 tion marks omitted).[11] Accordingly, the Yelloweagle court concluded that while the defendant focused his challenge narrowly on one of SORNA’s provisions, § 2250(a)(2)(A), it was not proper for the panel to analyze the provision as if it were a stand-alone statute. Id. at 1287-88. Instead, the court held that § 2250(a)(2)(A) was constitutional as part of SORNA’s statutory scheme. Id. Therefore, the court explained that it was key that Yelloweagle had “waived his challenge to § 16913,” allowing the panel to presume that § 16913 was a valid exercise of the Commerce Clause power. Id. at 1284-85, 1286-87.[12]
The Tenth Circuit panel then concluded that “the Necessary and Proper Clause Gives Congress the Authority to Enact § 2250(a)(2)(A).” Id. at 1286. “As the Supreme Court recently stated: ‘[I]n determining whether the Necessary and Proper Clause grants Congress the legislative authority to enact a particular federal statute, we look to see whether the statute constitutes a means that is rationally related to the implementation of a constitutionally enumerated power.’ ” Id. at 1285 (alteration in original) (quoting Comstock, 130 S.Ct. at 1956). “[W]e have before the court an undisputedly valid exercise of Congress’s Commerce Clause power — viz., the sex offender registration scheme of § 16913.” Id. at 1287. Therefore, “[i]t seems beyond peradventure that the criminal enforcement provision of § 2250(a)(2)(A) is ‘rationally related or reasonably adapted to the effectuation’ of the sex offender registration regime of § 16913.” Id. (quoting Kebodeaux, 634 F.3d at 297 (majority opinion) (in turn citing Comstock, 130 S.Ct. at 1956)). “Section 2250(a)(2)(A) ‘clearly was not enacted as a stand-alone provision, but rather as a complement to [SORNA’s] other provisions.’ ” Id. (alteration in original) (quoting Kebodeaux, 634 F.3d at 301 (Dennis, J., concurring in the judgment)). “[I]n a concurring opinion in Kebodeaux, Judge Dennis highlighted the relationship between § 2250(a)(2)(A) and the registration regime of § 16913---- ‘Section 2250(a)(2)(A) helps to make SORNA’s regulation of interstate commerce effective by obviating potential sources of interference or disruption of that objective. For example, had Congress not criminalized federal sex offenders’ undocumented, intra-state residence changes, there would [be] no deterrence to their moving intra-state without reregistering. This would have caused disparate and delayed enforcement of SORNA against federal sex offenders, allowing them to establish residences in some states as apparent law abiders, which would have made them difficult to monitor either in-state or in interstate commerce.’ ” Id. at 1288 (third alteration in original) (quoting Kebodeaux, 634 F.3d at 299 (Dennis, J., concurring in the judgment)). Therefore, the Tenth Circuit panel stated, “we conclude that Congress has the authority under the Necessary and Proper Clause to enact § 2250(a)(2)(A) in order to criminally enforce its validly enacted registration provision, § 16913.” Id. at 1289.
*156 Consistent with the Supreme Court and Circuit authority cited above, and unlike the majority, I would not treat § 2250(a)(2)(A) as a stand-alone statute. Instead, I believe we must analyze whether it is constitutional as part of SORNA’s statutory scheme. Because (1) the Supreme Court and circuit courts have consistently explained that SORNA’s statutory scheme is intended to regulate the interstate movement of sex offenders, and thus was passed pursuant to Congress’s Commerce Clause power; (2) Comstock teaches that a majority of the Supreme Court has now approved and adopted Justice Scalia’s Commerce Clause analysis in Raich; and (3) § 2250(a)(2)(A) clearly facilitates SOR-NA’s regulation of sex offenders’ interstate movement, because it is rationally related and reasonably adapted to preventing sex offenders from “slipping through the cracks” of state-based registration schemes, I would uphold § 2250(a)(2)(A) as a necessary and proper extension of Congress’s Commerce Clause power to enact SORNA’s other provisions, particularly § 2250(a)(2)(B). Doing so would be consistent with every other circuit that has considered the issue.
For these reasons, I concur only in the judgment upholding the constitutionality of § 2250(a)(2)(A) and affirming Kebodeaux’s conviction and sentence.

. United States v. Whaley, 577 F.3d 254, 258 (5th Cir.2009): accord United States v. Guzman, 591 F.3d 83, 90 (2d Cir.2010); United States v. Gould, 568 F.3d 459, 470-72 (4th Cir.2009); United States v. Ambert, 561 F.3d 1202, 1210-11 (11th Cir.2009); United States v. May, 535 F.3d 912, 921-22 (8th Cir.2008).

. Carr v. United States, - U.S. -, 130 S.Ct. 2229, 2240, 176 L.Ed.2d 1152 (2010) *147 (also quoting 42 U.S.C. § 16901 as stating, " 'Congress in this chapter establishes a comprehensive national system for the registration of [sex] offenders' ” (alteration in original)).

. Id. at 2239 n. 7 (alteration omitted) (quoting Smith v. Doe, 538 U.S. 84, 90, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003)).

. Id. at 2238-39 (second alteration in original) (quoting Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, Pub.L. 103-322, tit. XVII, § 170101(c), 108 Stat. 2041 (1994) (codified at 42 U.S.C. § 14071(d))).

. Id. at 2238.

. Id. at 2239.

. 42 U.S.C. § 16913(a) requires, “A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.” 42 U.S.C. § 16913(c) also provides, "A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.”

. See also Gill v. Office of Pers. Mgmt., 699 F.Supp.2d 374, 393 (D.Mass.2010) (stating that the second Comstock factor, history, is only a proxy to determine "the reasonableness of the relation between the new statute and pre-existing federal interests” (quoting Comstock, 130 S.Ct. at 1952) (internal quotation marks omitted)); Massachusetts v. U.S. Dep’t of Health & Human Servs., 698 F.Supp.2d 234, 250 (D.Mass.2010) (same).

. See also 16 Am.Jur. 2d Constitutional Law § 107 (2011) (slating that the second Com-stock factor, history, is a proxy for determining "the reasonableness of the relation between the new statute and pre-existing federal interests”); Michael C. Dorf, The Supreme Court’s Decision About Sexually Dangerous Federal Prisoners: Could. It Hold the Key to the Constitutionality of the Individual Mandate to Buy Health Insurance?, Findlaw.com (May 19, 2010), http://writ.news.findlaw.com/dori7 20100519.html ("[T]he seven Justices in the [iComstock] majority [] were fully comfortable with federal power extending to areas that are not independently regulable, so long as *153 regulation in those areas is reasonably related to regulation that is within the scope of congressional power.”).

. In support of this proposition, the George panel cited Whaley, 577 F.3d at 258; Gould, 568 F.3d at 470-72; Ambert, 561 F.3d at 1210; United States v. Hinckley, 550 F.3d 926, 940 (10th Cir.2008); and May, 535 F.3d at 921. George, 625 F.3d at 1130.

. Further supporting my view that George upheld § 2250(a)(2)(A) as necessary and proper to effectuate the exercise of Congress’s Commerce Clause power, the Tenth Circuit not only relied on George for its holding, but also never suggested that George could be read as supporting any other analysis, nor that the Tenth Circuit's reasoning had split it from the Ninth Circuit.

. Yelloweagle’s assumption that § 16913 is constitutional under the Commerce Clause is consistent with the affirmative holding of this court in Whaley that § 16913 is a constitutional exercise of the necessary and proper power to effectuate the Commerce Clause power, and that § 2250(a)(2)(B) is a constitutional exercise of the Commerce Clause power. Whaley, 577 F.3d at 258-61.