PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

FREDERICK D. DEBERRY;
RODGERICK L. LACKEY; PAUL S.
TALIFERO,

Defendants - Appellees.

No. 04-1532

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 03-CR-495-WM)

---

James C. Murphy, Assistant United States Attorney (William J. Leone, United
States Attorney, and Joshua G. Stein, Assistant United States Attorney, with him
on the briefs), Denver, Colorado, for Plaintiff - Appellant.

David C. Japha, The Law Offices of David C. Japha, P.C., Denver, Colorado
(James A. Castle, Denver, Colorado, Randy S. Reisch, Reisch Law Firm, LLC,
Denver, Colorado, and Michael J. Norton, Burns, Figa & Will, P.C., Englewood,
Colorado, with him on the brief) for Defendants - Appellees.

---

Before **HARTZ**, Circuit Judge, **BRORBY,** Senior Circuit Judge**,** and
**TYMKOVICH**, Circuit Judge.

---

**HARTZ**, Circuit Judge.

Frederick DeBerry, Rodgerick Lackey, and Paul Talifero (Defendants), inmates at the United States Penitentiary in Florence, Colorado (USPF), were indicted in the United States District Court for the District of Colorado for an alleged assault on Wayne Wheelock, a fellow inmate. Mr. Wheelock is Native American and Defendants are African American. Defendants contend that they were treated less favorably than three Native Americans who allegedly assaulted an African American several days after the assault on Mr. Wheelock, and they moved for discovery concerning selective prosecution. The district court granted their motion. When the government refused to comply with the discovery order, the court dismissed the indictment against Defendants with prejudice. The government appeals the dismissal. We have jurisdiction under 18 U.S.C. § 3731. Because we conclude that the district court's discovery order was erroneous, we reverse the order of dismissal.

## I.  BACKGROUND

Mr. Wheelock was assaulted on April 27, 2003. Three days later, three Native American inmates, Fred Goldtooth, Steven Dock, and Ricky Mungia (the Native Americans) allegedly stabbed Arnold Haskins, an African American inmate at USPF. On October 7, 2003, approximately five and one-half months after the assault, Defendants were indicted on charges of assault with intent to commit murder and assault resulting in serious bodily injury. At the time briefs

were submitted to this court the Native Americans had not been charged in the later attack. But on July 27, 2005, they were each indicted for assaulting Mr. Haskins with intent to commit murder, assaulting him with a dangerous weapon, and committing an assault resulting in his serious bodily injury; Mr. Mungia was further charged on a count of trafficking in contraband.

On June 21, 2004, Defendants moved for discovery concerning selective prosecution based on the government's failure to indict the Native Americans. They sought (1) a list of all cases in the previous three years "in which the Government charged a federal inmate in the District of Colorado with the charge of assault based on a stabbing of another inmate," including the race of both victims and defendants; (2) a list of all cases in the previous three years "in which the Government was referred a case involving a stabbing of one inmate by another for the purpose of determining whether charges would be sought against a federal inmate in the District of Colorado and no charges resulted[,]" including the race of both victims and defendants; (3) a Department of Justice document explaining the criteria for deciding whether to bring charges in such cases; and (4) a Department of Justice document "explaining the levels of law enforcement that were involved in the investigation of and the decisions concerning whether to prosecute" such cases. Aplt. App. at 38. Before the hearing on the motion, the government filed a superseding indictment charging Defendants with assault with

intent to commit murder, assault resulting in serious bodily injury, and possession of a dangerous weapon. Mr. Talifero was further charged with threatening a witness.

At the hearing on the discovery motion, the government asserted that Defendants had not produced enough evidence to warrant discovery, arguing that they had not met their burden under *United States v. Armstrong*, 517 U.S. 456 (1996), of showing evidence of both discriminatory impact and discriminatory intent. The government contended that a single anecdotal example of differential treatment did not demonstrate discrimination by the prosecution, and that differences in treatment could result from differences in evidence, the prison-release dates of the perpetrators, the press of business in the prosecutor's office, and the benefit of prosecuting the perpetrators. It mentioned that Defendants' alleged attack was captured on videotape, whereas the second assault was not. In addition, the government argued that responding to the request would be burdensome because it would need to hand-search the files of the United States Attorney to determine which cases involved stabbings of inmates and then to retrieve investigative reports, which are not kept in the United States Attorney's office after the cases are closed, from the FBI and Bureau of Prisons. Finally, the government asserted that the other assault "is going to be prosecuted," Aplt. App. at 108, but it had not yet sought an indictment because the Assistant United States

Attorney (AUSA) assigned to the case had been too busy. Counsel for Defendants responded that the Bureau of Prisons does keep track of stabbings at USPF so that the discovery would not be unduly burdensome, and that prison guards had witnessed the second assault.

The district court granted Defendants' motion for discovery. It ruled that the government's failure to indict Native Americans suspected of a crime almost identical to the one allegedly committed by Defendants was sufficient to show discriminatory effect for purposes of a discovery motion. The court said that discriminatory intent could be inferred from the disparate treatment of the assailants. It also said that one could draw negative inferences against the government from its expressing its intent to indict with respect to the second assault only after Defendants had filed a selective-prosecution motion. The court ordered the government to produce (1) all cases brought by the United States in the District of Colorado in the previous three years charging a federal inmate with stabbing another inmate, indicating the race of the defendants and victims in each case; (2) "[a] list for the same time period of all cases referred to the government involving a stabbing of one inmate by another in which no criminal charges resulted"; (3) a statement of the criteria used by the United States in deciding whether to prosecute; and (4) an identification of the persons involved in the investigations and decisions to prosecute in those cases. Aplt. App. at 62.

When the government refused to comply with the discovery order, the district court issued an order to show cause why the AUSAs involved in the case should not be held in contempt of court. During the hearing on the show-cause order, the government argued that rather than holding the AUSAs in contempt, the court should follow the procedure used in *Armstrong* and dismiss the indictment to allow the government to appeal the discovery order. After the hearing the court vacated its show-cause order and dismissed the indictment against Defendants with prejudice.

## II.  DISCUSSION

### A.  Standard of Review

We review de novo the district court's grant or denial of a defendant's selective-prosecution discovery motion. *United States v. James*, 257 F.3d 1173, 1178 (10th Cir. 2001) ("[W]hen we review a district court's discovery order in support of a selective-prosecution claim, we are determining the legal adequacy of the evidence. We review the legal adequacy of evidence de novo." (internal quotation marks omitted)).

### B.  Selective Prosecution

Claims of selective prosecution have been recognized by the Supreme Court for well over a century. In *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), two Chinese

subjects raised challenges under the Fourteenth Amendment's Equal Protection Clause to their incarceration for violating a San Francisco ordinance requiring operators of laundries in wooden buildings to obtain a permit from the city. About 200 Chinese owners of wooden laundries had been denied permits, whereas 80 non-Chinese owners had been granted permits to carry on their businesses under similar conditions. *Id.* at 374. The Supreme Court reversed the convictions, declaring:

> Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is . . . within the prohibition of the Constitution.

*Id.* at 373-74. In other words, a decision to prosecute that is "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification" is a denial of equal protection. *Oyler v. Boles*, 368 U.S. 448, 456 (1962). The ban on discriminatory prosecution is not limited to the states but also applies to the federal government under the Fifth Amendment's Due Process Clause. *Wayte v. United States*, 470 U.S. 598, 608 n.9 (1985).

A defendant claiming selective prosecution must demonstrate "that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 465 (internal quotation marks omitted). "To establish a discriminatory effect in a race case, the claimant

must show that similarly situated individuals of a different race were not prosecuted." *Id.* Discriminatory intent can be shown by either direct or circumstantial evidence. *Batson v. Kentucky*, 476 U.S. 79, 93 (1986).

Caution is required when evaluating selective-prosecution claims. The defendant is asking the judiciary to exercise power over a "special province" of the executive branch, a province in which, for good reason, the executive possesses broad discretion. *Armstrong*, 517 U.S. at 464 (internal quotation marks omitted). The decision to prosecute "is particularly ill-suited to judicial review." *Wayte*, 470 U.S. at 607. "Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.*; *accord Armstrong*, 517 U.S. at 465. Moreover, judicial review of prosecutorial decisions can "chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *Armstrong*, 517 U.S. at 465. Accordingly, "the presumption of regularity supports . . . prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *Id.* at 464 (internal brackets and quotation marks omitted). As the Supreme Court

has noted, "the standard [for proving a selective-prosecution claim] is a demanding one." *Id.* at 463.

And a like demanding standard applies to discovery. There is a "background presumption . . . that the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims." *Id.* at 463-64 (internal quotation marks and citation omitted). Responding to discovery on a claim of selective prosecution imposes many of the same costs that are associated with responding to a prima facie case of selective prosecution—diverting prosecutorial resources and disclosing prosecutorial strategies. *Id.* at 468. Although defendants seeking discovery concerning selective prosecution need not make a prima facie case of selective enforcement, *James*, 257 F.3d at 1178, they must satisfy a "rigorous standard." *Armstrong*, 517 U.S. at 468. Defendants must make "a credible showing" of both discriminatory effect and discriminatory intent. *Id.* at 470; *accord United States v. Bass*, 536 U.S. 862, 863 (2002) (per curiam); *James*, 257 F.3d at 1178.

### 1.    Discriminatory Effect

To establish discriminatory effect, Defendants "must show that similarly situated individuals of a different race were not prosecuted." *Armstrong*, 517 U.S. at 465. Defendants cannot satisfy this requirement because the allegedly similarly situated individuals, the three Native American inmates, are in fact

-9-

being prosecuted. They were indicted on July 27, 2005. To be sure, the Native Americans had not yet been indicted at the time of the court's discovery order, or even at the time of the dismissal. But at the hearing on the discovery order the government informed the district court that it intended to prosecute the second assault, asserting that "[t]his case is going to be prosecuted." Aplt. App. at 108. The government explained that the AUSA to whom the case had been assigned was being delayed by "a press of business." *Id.* at 108.

Defendants contend that the district court properly did not rely on what were merely the "bald assertion[s]" of government counsel. Aplee. Br. at 15. In support of this contention they cite two Fifth Circuit cases, *United States v. Johnson*, 823 F.2d 840, 842 (5th Cir. 1987), and *United States v. Patterson*, 962 F.2d 409, 414-15 (5th Cir. 1992). Both these cases are distinguishable, however, because they involved assertions about matters outside the prosecutor's personal knowledge—the circumstances of the offense. Here, in contrast, the AUSA was speaking about the government's decision to prosecute, a matter certainly within his personal knowledge. To reject the AUSA's representation is not only to ignore "the presumption of regularity" recognized in *Armstrong*, 517 U.S. at 464, but to disregard the AUSA's duty as an attorney. "[A]ttorneys are officers of the court, and when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath." *Holloway v. Arkansas*, 435 U.S.

-10-

475, 486 (1978) (internal quotation marks omitted); *see also United States v. Baer*, 235 F.3d 561, 564-65 (10th Cir. 2000) (accepting, in response to defendant's claim of vindictive prosecution, representations made by the prosecuting attorney as an officer of the court that the prosecution decision was not made for the alleged improper reason). Moreover, the district court expressed no reason to disbelieve the AUSA's representation.

Perhaps Defendants could complain that they were treated differently in that they were indicted so much more promptly than the Native Americans. But a delay such as the one in this case, ironically, does not necessarily indicate that the Native Americans were treated better than Defendants. The right to a *speedy* trial, not a delayed one, is guaranteed by the Constitution, U.S. Const. amend. VI; and both statutes of limitations and the Due Process Clause protect suspects by foreclosing tardy prosecutions, *see United States v. Marion*, 404 U.S. 307, 324 (1971) (due process can be violated by pre-indictment delay). We note that inmates suspected of committing serious crimes may suffer a number of negative consequences pending indictment and trial. *See, e.g., Griffin v. Vaughn*, 112 F.3d 703 (3d Cir. 1997) (prisoner suspected of rape held in administrative custody for 15 months).

Moreover, we question whether Defendants have made a sufficient showing that they and the Native Americans are similarly situated. We agree with the

Fourth Circuit's standard on this issue. In *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996), that court held that "defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." The evidence of Defendants' alleged assault differs from that in the other case in a significant respect. As the government noted in the discovery hearing, the alleged assault on Mr. Wheelock was captured on videotape—on the "best video [the investigating officer] ha[d] ever seen because the actual stabbing is shown clearly from at least one angle and shown clearly from another angle, and there is a third angle that shows it partially obscured by a pillar in the run-up and a fourth video footage." Aplt. App. at 108. In contrast, the stabbing alleged to have been committed by the Native Americans occurred inside a cell, outside the range of video cameras. Rather than a videotape, the prosecution will be relying on eyewitnesses to prove that assault. Those witnesses are corrections officers, who are surely likely to be more credible than inmates; but they can be suspected of ulterior motives not shared by video equipment, and they could understandably err in their observations and recollections concerning the roles of the individual defendants. At the least, the absence of video footage would require more preparation for trial.

In sum, because Defendants have not produced evidence that similarly situated individuals of another race were not prosecuted, they have not satisfied the discriminatory-effect prong of the *Armstrong* standard for obtaining discovery regarding selective prosecution.

### 2. Discriminatory Intent

As Defendants have failed to present evidence satisfying *Armstrong*'s discriminatory-effect prong, we need not address whether the evidence they presented satisfied the discriminatory-intent prong. *See James*, 257 F.3d at 1181. We note, however, that Defendants have not produced evidence of discriminatory intent. The district court inferred discriminatory intent from discriminatory effect; but we have rejected the finding of discriminatory effect. Nor is there any direct evidence of discriminatory intent in this case. The prosecutor did not, for example, make any racially disparaging comments or otherwise indicate that racial bias was the motivating factor in the delay in indicting the Native Americans.

Defendants having produced evidence of neither discriminatory effect nor discriminatory intent, the district court erred in granting discovery.

### C. Invited Error

Defendants appear to argue as an alternative ground for affirmance that even if the district court's discovery order was erroneous, it dismissed the

indictment at the government's urging, and thus the invited-error doctrine prevents the government from asking us to set aside the dismissal. Defendants misconceive invited error. The invited-error doctrine "prevents a party who induces an erroneous ruling from being able to have it set aside on appeal." *United States v. Burson*, 952 F.2d 1196, 1203 (10th Cir. 1991). As the Sixth Circuit has explained, the doctrine of invited error "is based on reliance interests similar to those that support the doctrines of equitable and promissory estoppel. Having induced the court to rely on a particular erroneous proposition of law or fact, a party . . . may not at a later stage . . . use the error to set aside the immediate consequences of the error." *Fryman v. Fed. Crop Ins. Corp.*, 936 F.2d 244, 249 (6th Cir. 1991) (internal quotation marks omitted). In other words, the invited-error doctrine precludes a party from arguing that the district court erred in adopting a proposition that the party had urged the district court to adopt. That is not what has happened here. The government is not arguing that dismissal of an indictment is an inappropriate sanction for defiance of a discovery order. Rather, it is arguing before us, as it did below, that the discovery order was improper. This case is indistinguishable from *United States v. Procter & Gamble Co.*, 356 U.S. 677, 680-81 (1958), in which the Supreme Court held that the government could appeal a judgment dismissing its civil antitrust suit for refusal to disclose grand jury materials even though the government had requested a

dismissal after the district court ordered disclosure. *See* 15B Wright, Miller & Cooper, Federal Practice and Procedures: Jurisdiction 2d § 3914.23 at 136-37 (1992).

## III.  CONCLUSION

We REVERSE the district court's order dismissing the superseding indictment, and REMAND for trial.