**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 27, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

WILLIAM I. WILSON,

Defendant-Appellant.

No. 11-1204
(D.C. No. 1:08-CR-00263-KHV-1)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, **ANDERSON**, and **EBEL**, Circuit Judges.

William I. Wilson appeals pro se[1] his convictions and sentence on multiple

counts of bank fraud, aggravated identify theft, fraudulent use of a Social Security

---

[*]   After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]   Wilson was originally represented by counsel in this appeal, but the court subsequently granted his motion to proceed pro se. Wilson was also initially represented by counsel in the district court, but ultimately proceeded pro se in that court as well, assisted by stand-by counsel.

number, and fraud in connection with an access device. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

Officers with the Aurora, Colorado, Police Department began the inquiry into Wilson's criminal conduct, but no state charges were filed against him. Federal authorities eventually took over the investigation. On June 18, 2008, a federal grand jury returned a twenty-one count indictment charging Wilson in case number 08-cr-263-KHV with seventeen counts of bank fraud, in violation of 18 U.S.C. § 1344; two counts of aggravated identify theft, in violation of 18 U.S.C. § 1028A(a)(1); and two counts of fraudulent use of a Social Security number, in violation of 42 U.S.C. § 408(a)(7)(B) (the "263 Case"). The indictment alleged that Wilson opened accounts at Eagle Legacy Credit Union ("ELCU") and JP Morgan Chase Bank ("Chase") using a Social Security number that belonged to another person named William Wilson. He deposited into the ELCU and Chase accounts non-sufficient funds ("NSF") checks drawn on other bank accounts that he controlled. Wilson then allegedly withdrew or otherwise used for his benefit the funds credited to the ELCU and Chase accounts from the deposits of the NSF checks.

In October 2008, the same federal grand jury returned an indictment charging Wilson with nine counts of mail fraud and one count of wire fraud. These charges, filed as case number 08-cr-00450-REB, related to Wilson's operation of a

water-filter-system business from March 2000 to November 2003 (the "450 Case"). The charges in the 450 Case were dismissed after Wilson's conviction in this case.

On December 2, 2009, Wilson was charged in a superseding indictment ("SI") in the 263 Case with three new counts of fraudulent use of a Social Security number, one new count of aggravated identity theft, and one new count of fraud in connection with an access device in violation of 18 U.S.C. § 1029(a)(2). The SI alleged that Wilson provided the same false Social Security number, which he represented as his own, when opening an account at Academy Bank, N.A., when adding an additional person as a signatory to his Academy Bank account, and when opening a credit card account with Washington Mutual Card Services. It also charged that Wilson used an unauthorized access device—the Washington Mutual credit card—to obtain things of value. One of the charges of fraudulent use of a Social Security number alleged that Wilson committed the offense while on pre-trial release, in violation of 18 U.S.C. § 3147.

Wilson filed several motions to dismiss the SI, alleging (1) selective prosecution based on his race; (2) vindictive, retaliatory prosecution; (3) sham prosecution; and (4) outrageous government conduct. The district court held an evidentiary hearing on these motions, at which Wilson, appearing pro se, examined witnesses and submitted written exhibits. The court issued a detailed, forty-five page memorandum and order on October 14, 2010, denying all of the motions to dismiss.

The 263 Case was tried before a jury beginning on October 29, 2010. Wilson appeared and represented himself at trial during the first four days, but he absconded and failed to appear for the fifth day of trial. He was arrested in Las Vegas and brought back to Denver to complete the trial. The jury found Wilson guilty on all counts, and the district court sentenced him to 120 months' imprisonment.

On appeal, Wilson raises contentions of error related to the trial court's denial of his pre-trial motions to dismiss the SI, the conduct of the trial, and his sentence.

## II. Discussion

Because Wilson proceeds pro se in this appeal, we construe his arguments liberally. *See de Silva v. Pitts*, 481 F.3d 1279, 1283 n.4 (10th Cir. 2007). But we have "repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quotation omitted).

Under Fed. R. App. P. 28(a)(9)(A), an appellant's argument must include his "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Tenth Circuit Rule 28.2(C)(2) provides further that "[f]or each issue raised on appeal, all briefs must cite the precise reference in the record where the issue was raised and ruled on." "[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief." *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). Furthermore, "perfunctory" allegations of error that "fail to

- 4 -

frame and develop an issue [are insufficient] to invoke appellate review." *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994).

In his copious appellate briefing, Wilson often does not indicate where an issue was raised or an argument was made in the district court, he fails to develop his arguments, he cites no relevant evidence in the record, and/or he cites no legal authority to support his propositions. Accordingly, we limit the scope of our review to the extent that Wilson has complied with applicable court rules. We also decline to address Wilson's arguments that have no relevance to the issues he raises and the outcome of this case. *See WWC Holding Co. v. Sopkin*, 488 F.3d 1262, 1275 n.9 (10th Cir. 2007) (declining to address argument that was "both unavailing and irrelevant"). And we will not review issues raised for the first time in Wilson's reply brief because doing so "robs the appellee of the opportunity to demonstrate that the record does not support an appellant's factual assertions and to present an analysis of the pertinent legal precedent that may compel a contrary result." *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000).

### A. Denial of Motions to Dismiss the SI

#### 1. Denial of Right to Testify at Evidentiary Hearing

The district court held a two-day evidentiary hearing addressing all of Wilson's motions to dismiss the SI. He contends that he was denied the right to testify at the hearing, but a review of the record indicates otherwise. During the first day of the hearing, the court advised Wilson that he would have an opportunity to

testify under oath.  He proceeded to call numerous other witnesses and presented written exhibits, but he never called himself as a witness.  Nor did the district court preclude him from testifying.  Wilson's contention is without merit.

### 2.  Selective Prosecution

Wilson argues that the district court erred in denying his motion to dismiss the SI on the basis of selective prosecution.  His theory was that the government had singled him out for prosecution based on his race, religion, heritage, and national origin.  Wilson described himself as Arab or Middle Eastern and indicated that he was born in Egypt.

"The Constitution prohibits selective enforcement of the law based on considerations such as race."  *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1263 (10th Cir. 2006) (quotation omitted).  In order to succeed on a selective-prosecution claim, a defendant must establish two elements:  "[1] the federal prosecutorial policy had a discriminatory effect and [2] it was motivated by a discriminatory purpose."  *Id.* at 1264 (quotation omitted).  To demonstrate a discriminatory effect, he "must show that similarly-situated individuals of a different race were not prosecuted."  *Id.* (quotation omitted).  "[D]efendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them."  *United States v. Deberry*, 430 F.3d 1294, 1301 (10th Cir. 2005) (quotation omitted).  "And the discriminatory-purpose element requires a showing that discriminatory intent was a

- 6 -

motivating factor in the decision to enforce the criminal law against the defendant. Discriminatory intent can be shown by either direct or circumstantial evidence." *Alcaraz-Arellano*, 441 F.3d at 1264 (citation and quotation omitted). Because a motion to dismiss an indictment based on selective prosecution asks the court "to exercise power over a special province of the executive branch," the standard of proof to succeed on such a claim is "demanding." *Id.* (quotations omitted). "We review for abuse of discretion the district court's grant or denial of a motion to dismiss an indictment." *Id.* at 1265.[2]

The district court held that Wilson's claim of selective prosecution failed on both prongs. First, he did not show that any similarly situated, non-Arab individual could have been, but was not, prosecuted for the offenses he was charged with in the 263 Case. Nor did he offer any credible evidence that the government, or the prosecutor in particular, acted for discriminatory reasons.

Wilson contends that the district court erred because *the government* failed to produce any credible evidence that any similarly situated, non-Arab individual was

---

[2]     Wilson argues that this court should employ a different analysis to determine whether he was selectively prosecuted in this case. He maintains that we should evaluate the charges in the superseding indictment based on the factors that typically motivate a prosecutor's decision to bring a case, such as the strength of the case and its relationship to the government's overall enforcement plan. This contention misreads the Supreme Court's decision in *United States v. Armstrong*, 517 U.S. 456, 465 (1996). Far from directing a court to apply these factors, the Supreme Court stated that they "are not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.* (quotation omitted). The Supreme Court therefore held that defendants must demonstrate that a prosecution has a discriminatory effect and purpose. *See id.*

investigated and prosecuted for the offenses charged in the SI. This contention misconstrues Wilson's burden of proof: *he* must establish a discriminatory effect. *See id.* at 1264. And he identifies only one non-Arab person who he alleges was similarly situated to him, but not prosecuted. He claims that the individual who he added as a signatory to his account at Academy Bank used a false Social Security number on her application, but he points to no evidence supporting that assertion or otherwise establishing that she was similarly situated to him. *See Deberry*, 430 F.3d at 1301. Likewise, Wilson's references to unidentified, non-Arab customers who overdrew their bank accounts at ELCU and Chase, or who opened accounts at Academy Bank with another person's Social Security number, fail to satisfy the demanding standard of proof that individuals of other races or heritage, who were similarly situated to him, were not prosecuted. *See id.*

Wilson's assertion that the United States Attorney's office in Denver failed during a twenty-seven month period to prosecute any other "bad check," identity theft, or Social Security fraud cases is likewise insufficient to show a discriminatory effect. The prosecution of only one defendant, who is Arab, is not evidence that any non-Arab individuals could have been, but were not, prosecuted for the offenses charged in the SI. *See United States v. Armstrong*, 517 U.S. 456, 459, 470 (1996) (holding "study" showing that all defendants prosecuted for a particular offense during one-year period were black "failed to identify individuals who were not black and could have been prosecuted for the offenses for which respondents were charged,

but were not so prosecuted").  Nor was Wilson's anecdotal evidence from criminal defense lawyers regarding their knowledge of the limited number of bad check prosecutions sufficient to support his contention of a discriminatory effect.  *See id.*

Because Wilson failed to present evidence showing a discriminatory effect, we need not address his contentions regarding proof of a discriminatory motive.  *See Alcaraz-Arellano*, 441 F.3d at 1266 (affirming based on failure to present evidence on one prong).  We affirm the district court's denial of his motion to dismiss based on a claim of selective prosecution.

### 3.  Sham Prosecution

Wilson also moved to dismiss the SI as a "sham prosecution," contending that the 263 Case was merely a tool used by Colorado authorities to revive state prosecutions that were barred on state constitutional grounds.  *United States v. Barrett*, 496 F.3d 1079, 1119 (10th Cir. 2007) (quotation omitted).  The district court construed this motion as raising a claim under the double jeopardy clause of the Fifth Amendment, which precludes multiple prosecutions for the same crime.  *See id.* at 1118.

Under the "dual sovereignty doctrine," the double jeopardy clause "is no bar to serial prosecution and punishment undertaken by separate sovereign entities."  *Id.* (quotations omitted).  And "[a] classic application of the dual sovereignty doctrine is the case of successive prosecutions by a state and the federal government."  *Id.* (quotation omitted).  In this case, Wilson argued the district court should apply the sham prosecution exception to this doctrine.  That exception may arise "where

prosecution by one sovereign is used as a cover or tool for a successive prosecution by another sovereign." *Id.* at 1119.

We have stated that "[w]hen a defendant claims that federal and state officials are not acting as dual sovereigns, he has a substantial burden of proving one sovereign is so dominated by the actions of the other that the former is not acting of its own volition." *United States v. Raymer*, 941 F.2d 1031, 1037 (10th Cir. 1991). Thus, evidence of close interaction between federal and state authorities is not sufficient to establish a sham prosecution, which "exists, if at all, only in the rarest of circumstances." *Barrett*, 496 F.3d at 1119. Moreover, a sham prosecution claim fails if jeopardy never attached in the state prosecution. *See Raymer*, 941 F.2d at 1038 (rejecting double jeopardy claim based on sham prosecution because jeopardy never attached in state prosecution). "We review a district court's legal conclusion on a double jeopardy claim *de novo*. Subsidiary factual findings are reviewed under the clearly erroneous standard." *Raymer*, 941 F.2d at 1037 (citation omitted).

The district court ultimately held that Wilson did not sufficiently allege a double jeopardy claim because state authorities never placed him in jeopardy on criminal charges based on the conduct alleged in the 263 Case. On appeal, Wilson continues to assert that his rights under the double jeopardy clause were violated because the 263 Case was a sham prosecution.[3] But his arguments do not point to

---

[3] In his reply brief, Wilson denies that he is making a sham prosecution argument in this appeal. But in his supplemental opening brief, he specifically

(continued)

- 10 -

any error in the district court's sole ground for denying his motion: the lack of jeopardy attaching on state-law charges. "[T]he omission of an issue in an opening brief generally forfeits appellate consideration of that issue." *Bronson*, 500 F.3d at 1104; *see also United States v. Yelloweagle*, 643 F.3d 1275, 1284 (10th Cir. 2011) (applying same rule in appeal of criminal conviction). Because the district court's finding is, by itself, a sufficient basis for its denial of Wilson's sham prosecution motion, and Wilson fails to address it, he has forfeited any challenge to that ruling. We therefore affirm the district court's denial of Wilson's motion to dismiss the SI based on a claim of sham prosecution. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1387-88 (10th Cir. 1997) (affirming where appellant's argument failed to address one of district court's independent grounds for granting summary judgment).

### 4. Vindictive Prosecution

Wilson also moved to dismiss the SI as the product of prosecutorial vindictiveness. The SI, which was filed in December 2009, added new charges related to Wilson's Academy Bank account and his Washington Mutual credit card, specifically three new counts of fraudulent use of a Social Security number, one new count of aggravated identity theft, and one new count of fraud in connection with an access device. Among other claims, Wilson contended in his motion to dismiss that

---

referenced his sham prosecution motion, and he expressly made that argument. *See* Aplt. Supp. Opening Br. at 21, 26-27. He also fails to identify any other motion to which his arguments are directed.

the government sought the SI in retaliation for his filing of a civil rights lawsuit in October 2009 against the prosecutors in this case and a United States Postal Service Inspector involved in the underlying investigation. *See Raymer*, 941 F.2d at 1040 ("When a defendant exercises constitutional or statutory rights in the course of criminal proceedings, the government may not punish him for such exercise without violating due process guaranteed by the federal Constitution.").

"A defendant has the burden of proof and must establish either (1) actual vindictiveness, or (2) a realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness." *Id.* Absent evidence of actual vindictiveness, "[o]ur inquiry must be whether, as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or punitive animus towards the defendant because he exercised his specific legal right." *Id.* at 1042 (quotation omitted). Moreover, "[t]here is no vindictiveness as long as the prosecutor's decision is based upon the normal factors ordinarily considered in determining what course to pursue, rather than upon genuine animus against the defendant for an improper reason or in retaliation for exercise of legal or constitutional rights." *Id.* (quotation omitted). If the defendant satisfies his burden, the prosecution must "justify its decision with legitimate, articulable, objective reasons." *Id.* at 1040. "[W]e review a district court's factual findings under the clearly erroneous standard; our review of the legal principles which guide the district court is *de novo*." *Id.* at 1039.

The district court held that Wilson failed to present any evidence of actual vindictiveness or a realistic likelihood of vindictiveness. As to the second prong, it concluded he could not establish a presumption of vindictiveness based solely on his filing of a civil rights action, relative to the timing of the SI in this case. *See United States v. Miller*, 948 F.2d 631, 634 (10th Cir. 1991). In *Miller*, we held that "a presumption of vindictiveness based on timing alone [was] unsound as it could easily be abused." *Id.* We observed further that "[a]dopting such a presumption would give sophisticated criminal suspects an opportunity to file civil charges against the government prior to an impending indictment, thus creating a presumption that the eventual charges were brought vindictively." *Id.*

The district court further held that, even if Wilson could establish a presumption of vindictiveness, the government had offered legitimate, articulable, and objective reasons for seeking the SI. It found that the government learned of the additional offenses while preparing to disclose to Wilson evidence of non-charged criminal conduct that it contemplated offering at trial under Fed. R. Evid. 404(b). And the record showed that the government provided Wilson's counsel with discovery concerning the Washington Mutual and Academy Bank accounts—and advised that it might seek additional charges in a superseding indictment—*before* he filed his lawsuit against the federal officials. The district court also found that the prosecutor believed that the government had sufficient evidence to charge Wilson with these crimes. It concluded that Wilson "presented no credible evidence which

casts doubt on the government's stated reasons," R., Vol. 3 at 56, stating further that, "[i]f anything, the timing suggests that defendant filed his lawsuit because the government was threatening to bring additional charges," *id.* at 56 n.41.

Wilson contends that one of the district court's findings is clearly erroneous, namely that the government did not learn of the additional allegations until the fall of 2009. He asserts that the government was aware of the evidence supporting the new charges in the SI by May of 2008. But Wilson does not challenge the district court's findings that the government advised him of the possibility that it would seek additional charges *before* he filed his civil rights claims against the federal officials, and that the government presented the evidence supporting these charges to a grand jury shortly thereafter. As we have noted, at the pre-trial stage "the prosecutor's assessment of the proper extent of prosecution may not have crystallized," and this "may be attributable to the prosecutor's discovery of additional information *or* a better understanding of the broader significance of existing information." *Raymer*, 941 F.2d at 1042-43 (quotation omitted and emphasis added). Therefore, even if the evidence regarding Wilson's additional offenses was available to the government at an earlier time, "[a] presumptive inference of vindictiveness is not warranted as a matter of law by the sequence of events preceding the [SI]" in this case. *Id.* at 1042. We affirm the district court's denial of Wilson's motion to dismiss the SI based on a claim of vindictive prosecution.

### 5. Outrageous Government Conduct

Wilson's final motion sought dismissal of the SI based on outrageous government conduct. "To succeed on an outrageous conduct defense, the defendant must show either: (1) excessive government involvement in the creation of the crime, or (2) significant governmental coercion to induce the crime." *United States v. Pedraza*, 27 F.3d 1515, 1521 (10th Cir. 1994). Within these two contexts, "the relevant inquiry . . . is whether, considering the totality of the circumstances the government's conduct is so shocking, outrageous and intolerable that it offends the universal sense of justice." *United States v. Perrine*, 518 F.3d 1196, 1207 (10th Cir. 2008) (quotation, alteration, and ellipsis omitted). We have characterized the scope of this defense as "narrow," *id.*, and "extraordinary," *Pedraza*, 27 F.3d at 1521. We review de novo a district court's denial of a motion to dismiss based on outrageous government conduct. *Id.*

Wilson contends that the government's conduct in this case was outrageous with respect to the charges relating to his use of a Washington Mutual credit card. He asserts that the government "manufactured" these offenses by presenting "sham witnesses" who testified falsely when the government "knew" he had no credit card and that he only had checking accounts and debit cards with Washington Mutual. He provides no citation to the record in support of these assertions. *See United States v. Snow*, 663 F.3d 1156, 1157 n.1 (10th Cir. 2011) (explaining the court will not generally consider factual allegations unsupported by citations to the record, and will not sift through record to find support for an argument). Moreover, as the

- 15 -

government points out, Wilson's contention challenges the legal or factual basis for the charges, rather than showing that the government created or induced the crimes. *See Pedraza*, 27 F.3d at 1521 ("Excessive government involvement occurs if the government engineers and directs the criminal enterprise from start to finish." (quotation and brackets omitted)); *United States v. Harris*, 997 F.2d 812, 816 (10th Cir. 1993) (noting "classic example" of government creation of a crime where government assisted and encouraged defendant to set up a methamphetamine lab). Wilson has not shown any error in the district court's denial of his motion to dismiss the SI based on a claim of outrageous government conduct.

### 6. Re-evaluation of District Court's Factual Findings

Finally, Wilson invites this court to "re-evaluate" the district court's factual findings in support of its denial of his motions to dismiss the SI. But he does not identify particular factual findings relevant to the 263 Case that he claims the court decided in error, along with citations to the record. He therefore fails to offer sufficient argument on this issue to invoke this court's appellate review. *See Murrell*, 43 F.3d at 1389 n.2. Nor will we review the "sample" of allegedly erroneous findings by the district court that Wilson identifies for the first time in his reply brief. *See Stump*, 211 F.3d at 533.

## B. Trial and Post-Trial Error

### 1. Denial of Motion for Mistrial

Wilson argues that the district court erred by denying his motion for mistrial based on testimony he alleges was incurably prejudicial. The government called as a witness at trial Andrew Jones, a fraud investigator with the United States Postal Inspection Service. Inspector Jones was involved in the investigations underlying both the 263 Case and the 450 Case. He was also one of the federal officials who Wilson accused of being anti-Arab.

During Wilson's pro se cross-examination of Inspector Jones, Wilson asked him questions about an envelope the Inspector had retrieved from a mailbox at a United Parcel Service store where Wilson had received mail. The envelope was from Washington Mutual, and it was addressed to First Community Mortgage, a business owned by Wilson. The following exchange took place:

> Wilson: My question was where did Washington Mutual, if the account is a credit card and the credit card for William Wilson, that the statement coming from Washington Mutual coming not to William Wilson, is coming to a First Community Mortgage?
>
> . . . .
>
> Jones: If you're asking if that – my answer is this – is this linked up with the Washington Mutual credit card itself? I don't know. I saw that in other evidence that comes back to your name. Is William Wilson – is this particular William Wilson linked up to the credit card that we discussed today? I don't know. You're right, it does come back to First Community Mortgage. I'm telling you that I took the mail, and this is one piece of mail, and it came back to

- 17 -

Washington Mutual. The other evidence shows that it – you had a credit card.

Wilson: Could it possibly [be] that there is some evidence missing pertaining to Washington Mutual somewhere?

Jones: There is certainly – there could certainly be other evidence that First Community Mortgage is also part of the crime somewhere. *You've done a lot of crime. It's hard to get all of it in.*

Wilson: I appreciate – I don't appreciate your personal opinion because I do have personal opinion of you, too, so if you could please save it to yourself.

Jones: You asked me a question.

Wilson: But you also go beyond –

Jones: I apologize, Mr. Wilson.

R., Vol. 3 at 1071-73 (emphasis added).

Wilson's stand-by counsel immediately asked for a bench conference. Before speaking to counsel and Wilson at sidebar, the district court advised the jury as follows: "Meanwhile, members of the jury, the Court's going to strike the detective's statement that the defendant has done a lot of crime and that was totally unnecessary and it wasn't a proper response to the question that was asked." *Id.* at 1074. In response to Wilson's motion for a mistrial, the court initially commented that Inspector Jones's statement was "[v]ery unprofessional" and instructed the prosecutor "to counsel him about the fact that he's testifying as a law-enforcement officer. This is not a personal issue." *Id.* at 1075. The prosecutor then argued in opposition to Wilson's motion that his cross-examination of government witnesses

- 18 -

was often broader than the issues that were relevant in the 263 Case.  The court responded:

> I think that's a fair observation.  So, Mr. Wilson, this situation is partly because of the nature of the questions that you are asking.  And you're injecting a lot of issues here that don't really have anything to do with whether you're guilty or not guilty of the particular crimes charged.  So the Court has admonished the witness, but I could do the same to you.  You need to stick to the charges which the Government has filed against you.  They're not on trial for the way they conducted the investigation.  I've already addressed that before trial.  And you need to stick to the matters which are directly relevant to the subject of this lawsuit.  'Cause you're inviting him to get off subject.

*Id.* at 1075-76.  The court then stated, "I'm overruling the motion for mistrial partly because . . .  of what I just told Mr. Wilson.  I think that the nature of his questions are inviting the witness to interject personal opinions and straying from what is strictly relevant here."  *Id.* at 1076.

We review a trial court's denial of a motion for mistrial for an abuse of discretion.  *United States v. Martinez*, 455 F.3d 1127, 1129 (10th Cir. 2006).  "[W]e will reverse only if the decision was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment."  *Id.* (quotations omitted).  "In determining whether a new trial is required after a witness offers improper information, we consider (1) whether the prosecutor acted in bad faith, (2) whether the district court limited the effect of the improper statement through its instructions to the jury, and (3) whether the improper remark was inconsequential in light of the other evidence of the defendant's guilt."  *United States v. Lamy*, 521 F.3d 1257, 1266 (10th Cir. 2008) (quotation omitted).  The government

argues that each of these factors supports the district court's denial of Wilson's motion for mistrial.

Wilson disagrees. He disputes that he opened the door to Inspector Jones's testimony regarding his other criminal conduct. He maintains that the Inspector's comment was intentional, rather than inadvertent, based on that witness's experience in testifying and the likelihood that Inspector Jones held some animosity against Wilson due to his allegations of racial bias. Wilson also contends that the district court's order striking Inspector Jones's testimony was insufficient to cure the undue prejudice without an additional cautionary instruction directing the jury to disregard that testimony in their deliberations. He argues, as well, that the evidence supporting his guilt—specifically with respect to his intent to defraud or deceive—was not overwhelming. Finally, Wilson asserts that regardless of the strength of the evidence against him—and even if the necessary curative instruction had been given— allowing the jury to hear propensity or bad-character evidence related to Wilson's other criminal conduct requires reversal of his conviction.

Wilson's arguments ignore the record, misconstrue the case law, and fail to show that the district court's factual findings were clearly erroneous. First, he offers only the bald assertion that he did not open the door to Inspector Jones's statement about his other crimes. To be sure, the district court agreed with Wilson that Inspector Jones's comment was unprofessional and that, as a law-enforcement officer, he was expected to avoid personal commentary in his testimony. But the

court held that Wilson was nonetheless *partly* responsible for inviting the Inspector to stray in his testimony from relevant issues and to interject personal opinions. Moreover, Wilson ignores the other instances, cited by the government, in which he affirmatively elicited testimony regarding the Inspector's involvement in investigating other, unrelated charges against him. Thus, he fails to show error, much less clear error, in the district court's finding.

Second, contrary to Wilson's assertion, the trial court did instruct the jury, at the close of trial, to disregard evidence that the court had stricken, and it cautioned the jury more specifically that

> [i]n determining whether defendant is guilty or innocent, you will consider only whether he has committed the facts charged in the indictment. Defendant is not on trial for anything else. Therefore, even if you believe that defendant committed some other crime, you must find defendant not guilty if the evidence fails to convince you beyond a reasonable doubt that defendant committed the specific crimes charged in the indictment.

R., Vol. 3 at 1258. Cautionary instructions such as these are "ordinarily sufficient to cure any alleged prejudice to the defendant and declaring a mistrial is only appropriate where a cautionary instruction is unlikely to cure the prejudicial effect of an error." *United States v. Peveto*, 881 F.2d 844, 859 (10th Cir. 1989). In fact, "[w]e presume that jurors will follow clear instructions to disregard evidence unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be

devastating to the defendant." *United States v. Caballero*, 277 F.3d 1235, 1243 (10th Cir. 2002) (quotations omitted).

Third, contrary to Wilson's assertion, the evidence supporting his guilt, including the evidence of his intent to defraud and deceive, was overwhelming. The jury heard evidence that Wilson wrote checks on bank accounts that he knew were closed, deposited them in his accounts with ELCU and Chase through ATM machines at other banks, then withdrew funds from the ELCU and Chase accounts before those banks could determine that the checks would not be honored. The evidence also showed that, in opening his accounts with ELCU, Chase, and Academy Bank, as well as when he applied for a credit card with Washington Mutual, Wilson represented as his own Social Security number the Social Security number belonging to another person named William Wilson. Wilson's argument that some of the evidence was circumstantial fails to detract from the weight of the government's case overall.

Lastly, the cases Wilson cites do not support his final contention that, despite the overwhelming evidence of his guilt, a cautionary instruction was not sufficient to cure the prejudice in this case. Notably, in *Sumrall v. United States*, 360 F.2d 311, 312-13 (10th Cir. 1966), the district court had overruled the defendants' objection to testimony regarding their prior criminal records and no cautionary instruction was given. And in *United States v. Sands*, 899 F.2d 912, 914-15 (10th Cir. 1990), no cautionary instruction was requested or given, and the evidence of guilt was not

- 22 -

overwhelming.  We conclude that the district court did not abuse its discretion in denying Wilson's motion for mistrial.

## 2.  Denial of Sixth Amendment Right to Counsel

Wilson makes two separate arguments in support of his contention that he was denied his Sixth Amendment right to counsel.  First, he contends that he was forced to choose between being represented by incompetent counsel and representing himself.  He maintains that his appointed counsel refused to pursue his claims of selective and vindictive prosecution, so he was forced to proceed pro se in order to file his motions to dismiss the superseding indictment.  But by Wilson's own measure, this claim has no merit if this court affirms the district court's denial of those motions.  Therefore, we have no occasion to consider it further.

Wilson's second contention is that the district court failed to advise him, in connection with his request to proceed pro se at trial, of the potential penalties he was facing if he were convicted, including sentence enhancements and aggravating factors, possible consecutive sentences, and the use of uncharged conduct in sentencing, as well as possible defenses to the charges.  Wilson asserts that his waiver of counsel was therefore not knowing and voluntary.

When a defendant chooses to exercise his constitutional right to represent himself, his relinquishment of the benefits of representation by counsel must be knowing and intelligent.  *United States v. Turner*, 287 F.3d 980, 983 (10th Cir. 2002).  And it is up to the trial judge to assure that the defendant's waiver of counsel

is knowing and intelligent. *Id.* "However, there is no precise litany of questions that must be asked of defendants who choose self-representation." *Id.* (quotation and brackets omitted). And reversal is not required "if the surrounding facts and circumstances indicate that the defendant understood his right to counsel and the difficulties of *pro se* representation." *Id.* (quotation omitted). We review de novo the validity of a waiver of counsel, and we will not reverse the underlying factual findings absent clear error. *See id.*

When Wilson moved to proceed pro se in the district court, the court held a hearing during which it carefully reviewed the charges against him and the possible penalties he would face for each offense. The court cautioned Wilson that if he chose to represent himself he would be proceeding against very experienced prosecutors; that the court would not advise him with regard to how to try the case or positions he should take; that it would apply to him the same evidentiary and legal rules it would apply to the prosecution; and that he would have to make decisions about what defenses he wanted to present, including any defenses to the merits of the charges if his pro se motions to dismiss the superseding indictment were not successful. As to each of the court's cautionary statements, Wilson affirmatively stated his understanding. The district court ultimately advised Wilson of its opinion that he would be better off being represented by counsel, but he persisted in his wish to represent himself. We conclude, based on the record, that Wilson understood his right to counsel and that he effectively waived that right.

### 3. Sufficiency of the Evidence to Establish that the Victim Banks Were Federally Insured

To support a conviction under 18 U.S.C. § 1344(1), "the government must prove that: (1) the defendant knowingly executed or attempted to execute a scheme or artifice to defraud a financial institution; (2) the defendant had the intent to defraud a financial institution; and (3) the bank involved was federally insured." *United States v. Gallant*, 537 F.3d 1202, 1223 (10th Cir. 2008) (quotation omitted). Wilson contends that the evidence presented at trial was insufficient to establish that the victim banks were federally insured at the time of the alleged crimes. The government notes that Wilson does not point in the record to where he raised this issue in the district court. This court applies a "waiver rule," under which "we review for plain error where a defendant appeals the sufficiency of the evidence based upon an argument that he failed to make or reaffirm before the district court. Our plain error analysis in this context, however, is essentially the same as our usual sufficiency-of-the-evidence analysis." *Id.* (citation and quotations omitted).

"Evidence is sufficient to support a conviction if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence, along with reasonable inferences therefrom, taken in a light most favorable to the government." *Id.* at 1222 (quotations omitted). The bank-fraud charges in this case related to ELCU and Chase, and the government presented testimony from representatives of each of these banks that its deposits were federally insured. Wilson argues that the evidence failed to establish that the banks were federally

insured *at the time of the offenses*, but that was a reasonable inference the jury could make based upon the witnesses' testimony. Therefore, Wilson's insufficient-evidence contention is without merit.

### 4. Denial of Rule 29 Motion

Wilson argues that the district court erred in denying his motion for acquittal under Fed. R. Crim. P. 29. But rather than making any argument in his appeal brief, he refers the court to the arguments he made in the trial court. This is not acceptable appellate argument. Tenth Circuit Rule 28.4 provides, "Incorporating by reference portions of district court or agency briefs or pleadings is disapproved and does not satisfy the requirements of Fed. R. App. P. 28(a) and (b)." Wilson argues in his reply brief that he was not able to present a detailed argument on this issue until March 20, 2012, the date he says he received a copy of the record on appeal. But that assertion fails to excuse his decision not to comply with the court rules, because he submitted his deficient argument to the court on April 5, 2012. We hold that Wilson has waived appellate consideration of the district court's denial of his Rule 29 motion.

### C. Sentencing Error

Wilson raises one claim of error regarding his sentence: he maintains that he was sentenced more severely for exercising his constitutional right to represent himself at the trial. But the district court's statements during the sentencing hearing that Wilson cites do not support his contention. He points only to the court's observations that he lacked any remorse and that he was fixated on being a victim of

selective and vindictive prosecution, citing nothing in the record indicating that the

district court's sentencing decision was influenced by his election to proceed pro se.

Wilson's contention has no merit.[4]

The judgment of the district court is AFFIRMED.

Entered for the Court

David M. Ebel
Circuit Judge

---

[4]     Wilson makes a different argument in his reply brief: that the district court inferred his lack of remorse from his silence at sentencing, in violation of his Fifth Amendment privilege against self-incrimination. We decline to address this contention, which Wilson failed to make in any of his opening briefs. *See Stump*, 211 F.3d at 533. We note, however, that Wilson testified at his sentencing hearing.